[No. 1441.]

## JAMES D. BYRNES AND EDWARD MULVILLE, APPELLANTS, v. JOSEPH M. DOUGLASS, RESPONDENT.

EJECTMENT—DEFENSE TO—CONDEMNATION PROCEEDINGS.—In an action of ejectment, where it is shown that, subsequent to the commencement of the action, the defendant had begun proceedings for condemnation of the premises in dispute, and that in these proceedings an order had been made authorizing him to retain possession of the premises during the pendency of the proceedings, which were still pending, such order is a defense to the action.

JURISDICTION—COLLATERAL ATTACK.—The petition for condemnation gave the court jurisdiction to make the order, and, consequently, even if erroneous, it is not open to collateral attack.

IDEM—AVERMENTS OF PETITION, NOT PROOF OF THEM, CONFERS.—It is the averments of the petition, and not proof of them, that confers jurisdiction upon the courts.

ESTOPPEL—ASSIGNEE OF LESSEE.—A party who takes a lease of a mine of which a tunnel is claimed and held as part, and under that lease enters into possession of both mine and tunnel, is estopped to deny the title of his lessors to the tunnel, and his assignee of the lease is equally estopped. (Syllabus by BIGELOW, C. J.)

APPEAL from the District Court of the State of Nevada, Storey county; *Richard Rising*, District Judge:

Action by James D. Byrnes and others against J. M. Douglass. Judgment for defendant, and plaintiffs appeal. Reversed.

Action of ejectment to recover possession of the Atlantic Consolidated Mining claim, and of a tunnel known as the "Atlantic Consolidated Tunnel," which begins some 300 feet from said claim, and runs into and through the same. The complaint alleges plaintiffs' ownership of the premises, ouster by the defendant, and that the tunnel was constructed by plaintiffs' predecessors in interest in the mine, for the purpose of prospecting, developing, and working the same, and that it is appurtenant to and a part of said mining claim. The answer admits plaintiffs' ownership of the mine, but denies ouster therefrom. It admits that the tunnel was constructed by plaintiffs' grantors, alleging that it began on what was known as the "Cadiz" claim, then belonging to said grantors, and ran thence into the Atlantic claim, but that they had abandoned and forfeited said Cadiz claim, and had abandoned the tunnel. It alleges that the defendant's grantors had relocated the Cadiz, under the name of the "Contact," and that defendant had taken possession of the tunnel for the purpose of extending it into another claim owned by him, and denies that it is appurtenant to or any part of the Atlantic claim. Defendant also alleges that he has located the same as a tunnel right under the laws of Congress, and he sets up a right to the possession of the part passing through the Atlantic claim under an order made by the judge of the district court of Nevada, in and for Lyon county, in condemnation proceedings commenced by him in said court against plaintiffs, for the purpose of condemning a right of way through the claim, authorizing him to take possession of the same during the pendency of the proceedings, which were still pending.

The evidence shows that the tunnel was originally partly constructed in 1862, for the purpose of obtaining a supply of water for Silver City, and, after its use for that purpose was abandoned, its owners used it for the purpose of prospecting

and working the Atlantic claim, then belonging to them; and that it has always since been in possession of the owners of said claim until defendant took possession of it, and has always been claimed by them as a part of said mine. The Atlantic claim has been patented, but no mention of the tunnel is made in the patent  In 1876 the owners of the Atlantic located the ground upon which the mouth of the tunnel was situated, under the name of the Cadiz. The annual work not having been done on the Cadiz, it was relocated January 22, 1887, by T. P. Mack, but he did no work upon it, and it again became open to location. In March, 1890, the then owners of the Atlantic leased the mine to W. H. Stanley, and placed him in possession of the same, including the tunnel. In July, 1890, the Cadiz ground was again relocated by C. E. Brown, under the name of the "Contact," and he, in June, 1891, conveyed the same to Stanley and one Millevich. In September, 1891, the defendant purchased from Stanley his interest in the unexpired lease and his half interest in the Contact ground. Defendant then took possession of both claims and of the tunnel. The court found that the tunnel was not appurtenant to the mine, that the plaintiffs were not entitled to its possession, and gave judgment for the defendant. Plaintiffs appeal.

*W. E. F. Deal*, for Appellants:

I.  The respondent having taken possession as tenant of appellants was estopped from denying appellants' tunnel right. (*Rector* v. *Gibbon*, 111 U. S. 276.)

II.  One of the covenants of the lease, under which respondent held title to the tunnel, was that he should, at its expiration, surrender the premises. He not only did not do this, but he denied appellants' title and sought to acquire an adverse title to the land upon which the mouth of the tunnel was situated. Respondent can only hold such title as trustee for appellants.

*F. M. Huffaker*, for Respondent:

I.  When respondent filed his supplementary answer, setting up the condemnation proceedings, with a certified copy of the order of the district judge, giving him possession of

this very tunnel pending said proceedings, and also showing that appellants had removed the proceedings into the U. S. Circuit Court, appellants could not maintain any action for the recovery of the possession of the tunnel while said order remained in force, and all questions as to title and compensation must be determined in the condemnation proceedings. (Stats. 1875, 111.)

II. Appellants have no title to anything except what is contained in the sheriff's deed under the Blackburn judgment. This did not include the Contact ground or any tunnel thereon.

By the Court, BIGELOW, C. J. (after stating the facts):

The only part of the plaintiffs' mining claim which the defendant was detaining from them at the commencement of the action is the tunnel above described. That, consequently, is all there is in dispute. The order in the condemnation proceeding authorized the defendant, during the pendency of those proceedings, to take possession of that part of the tunnel which passed through the Atlantic mining claim. This order, if valid, would seem to be a complete defense as to that part of the ground. Its validity is attacked only upon one point, and that is that a tunnel constructed for the purpose of one mine cannot be condemned for the use of another mine; and a long list of authorities are cited wherein that principle has been asserted. We do not, however, deem it necessary to decide the point upon this appeal. As this is a collateral attack upon the order, the question is not whether it is erroneous, but whether the court had jurisdiction to make it. (Van Fleet, Coll. Attack, secs. 16, 17.) Condemnation proceedings are commenced by the filing of a petition. (Gen. Stats., sec. 257.) Section 267 provides that at any stage of the proceedings the court may make an order placing the petitioner in possession of the property upon his giving a sufficient bond. The petition filed here alleged that the tunnel had been constructed by the defendant. If so, it probably would not be contended that the right to maintain it was not subject to condemnation (Rand. Em. Dom., sec. 118), and consequently subject to any order that might be lawfully made in the proceedings. The evidence in this case

tends to show that the allegation in the petition that the defendant had constructed the tunnel is not true, but this is immaterial, as jurisdiction to act comes from the averments of the petition, and not from proof of their truthfulness. (*Stuart* v. *Allen*, 16 Cal. 474; *Richardson* v. *Butler*, 82 Cal. 181; Van Fleet, Coll. Attack, sec. 60.)  The proper procedure would, doubtless, have been to have stayed this action until the application to condemn had been finally disposed of, and probably that would have been done had either party asked it; but, as they did not, we do not think the court erred in rendering judgment for the defendant as to that part of the tunnel covered by the order.  Should the defendant finally fail in the proceedings, this judgment will probably be no bar to another action of ejectment.

As to that part of the tunnel outside the Atlantic claim it appears unnecessary to consider the interesting question, argued at considerable length, of whether a tunnel run through the public mineral lands of the United States by a mine owner, for the purpose of developing or working his mine, can be taken from him by the subsequent location of the ground upon which it is situated outside the boundaries of his claim. The evidence is clear that the tunnel was constructed by the owners of the Atlantic mine, and was appropriated to and used for the purposes of that mine for a number of years. Whenever the mine was conveyed, the possession of the tunnel went with it.  It was occupied and treated as a part of the mine, and, at least as against all the world except such a subsequent locator, was part and parcel of it.  The evidence also shows, without contradiction, that, when Stanley took a lease of the property, he was placed in possession of the tunnel as a part of his leasehold estate.  Under these circumstances, he was estopped to deny the title of his lessors.  Having entered into possession under the lease, the outstanding title purchased from Brown, whether good or bad, could not have been asserted by him until after he had surrendered the possession to those from whom he had obtained it.  Such being the case, his assignee of the lease, the defendant, stands in no better position, and is also estopped to deny that title; and, as no question is made that the plaintiffs have succeeded to the title, he is equally

estopped to deny their title.   (Wood, Land & Ten., sec. 232; Tayl. Land. & Ten., sec. 91; Bigelow, Estop. 396; *Rector* v. *Gibbon,* 111 U. S. 276.)

The fact that the defendant, at the same time that he obtained an assignment of the lease, also purchased from the lessee, Stanley, a half interest in the Contact location, cuts no figure in the case; for, having obtained the possession from him, he is equally estopped, no matter how many other titles he may have.   The same principle will apply to the tunnel location.   If it has any validity in such a case as this, which is very doubtful, the defendant is estopped to assert it.

Judgment reversed, and cause remanded for a new trial in accordance with this opinion.