RIVERSIDE COAL COMPANY ET AL. *v.* NORTH INDIAN-
APOLIS CRADLE WORKS.

[No. 24,354.   Filed May 29, 1923.   Rehearing denied January
30, 1924.]

1. LANDLORD AND TENANT.—*Description of Leased Premises.—
Sufficiency.*—A lease of a tract of ground to a retail coal com-
pany, for the purpose of unloading and storing coal, describing
the tract as "the north portion of certain lots adjacent to what
is known as the Big Four Switch, lying directly north of the
warehouse" of the lessor, included a part of one of the lots
lying along the railroad switch, although it was not "directly
north of the warehouse", where the lessee took possession of
it and used it for unloading coal during the term of the lease,
and other words in the lease referred to such tract as being
included.   p. 182.

2. LANDLORD AND TENANT.—*Estoppel to Deny Landlord's Title.*
—In an action against a tenant for possession of the leased
premises, evidence offered by the defendant to show the lessor's
lack of title was properly rejected, as a tenant is estopped to
deny his landlord's title so long as he is holding under the
lease.   p. 184.

3. LANDLORD AND TENANT.—*Tenant Wrongfully Holding Over.*
—*Liability for Damages.*—Where a lessee wrongfully holds pos-
session of a part of the leased premises after the expiration
of the lease, he is liable for damages, and in an action by the
landlord for possession thereof, evidence is admissible of the
rental value of the entire tract, where the lessee's wrongful
holding over of a part of the tract made it impossible to rent
the remainder.   p. 185.

Riverside Coal Co. *v.* No. Indianapolis, etc., Works—194 Ind. 176.

4.   APPEAL.—*Transfer by Supreme Court.—Error in Opinion of Appellate Court.—Opinion on Transfer.—Statute.*—Where the Supreme Court transfers an appeal from the Appellate Court because of error in the opinion of the latter, "the judgment of the Appellate Court is vacated" (§1394, cl. 2, Burns 1914, Acts 1901 p. 567, §10), and neither criticism of, nor reference to, the opinion of the Appellate Court is necessary.   p. 185.

From Marion Superior Court (A1209) ; *W. W. Thornton,* Judge.

Action by the North Indianapolis Cradle Works against the Riverside Coal Company and others. From a judgment for plaintiff, the defendants appeal. (Transferred from Appellate Court under subdivision 2, §1394 Burns 1914.)   *Affirmed.*

*Robbins, Weyl & Jewett,* for appellants.
*Charles A. Dryer,* for appellee.

EWBANK, J.—Appellee sued to recover possession of certain real estate, with damages for alleged unlawful holding over after the termination of a lease, and re-covered a judgment for possession with $1,379.07 as damages, and costs. The only error assigned is over-ruling the motion for a new trial, the specifications being that:   (a) the finding is not sustained by the evidence; (b) and is contrary to law; (c) that the damages are excessive; (d) that the trial court erred in admitting certain evidence; and (e) in rejecting certain other evidence.

 · The paragraph of complaint alleging the execution of a written lease, which is the only one sustained by any evidence, alleges that the plaintiff, by an instrument of writing, leased to certain of the defendants (appellants) then doing business under the name of Riverside Coal Company, for the term of three years from July 1, 1911, certain real estate in the city of In-

dianapolis, Marion County, Indiana, by the following description: "The parcel of land covered by this agreement is of the north portion of certain lots adjacent to what is known as the Big Four Switch, lying directly north of the warehouse of said first party (lessor) and extending east to a board fence on a line with the east end of said warehouse, the north boundary being the south line of the alley running east and west between Twenty-ninth and Eugene Streets"; that the lease (as set out) recited that the lessor and lessee were both "corporations under the laws of the State of Indiana, located in the City of Indianapolis, Marion County, Indiana", and that the leased premises should be used only for unloading and storing coal, but prohibited piling any coal against the lessor's warehouse; that it also provided that the lessees would vacate the leased premises on thirty days notice to quit, at any time the lessor should wish to take possession thereof for use in connection with its own business; that the lessees occupied said premises (fully and correctly described in the complaint) until in June, 1913, when they perfected the organization of the Riverside Coal Company as a corporation, with the former partners as the incorporators, and assigned to it all the business and assets of the partnership in consideration of the assumption by it of all the partnership liabilities; that the corporation thereupon, with full knowledge of the terms and conditions of the tenancy, took and held possession of the leased premises, and thereafter paid rent at the rate stipulated in the lease until July 1, 1915 (which was one year after the three year term expired); that on July 12, 1916, plaintiff notified the defendant corporation in writing that plaintiff wished to take possession not later than August 11, 1916, of the leased premises, for use in connection with its own business, and that said defendants should vacate the same; that

defendants failed and refused to vacate a strip about fifteen feet wide of the leased premises, at the west end, next to the railroad, but wrongfully held over and still holds possession of that strip, which is alleged to lie between the railroad switch and the remainder of plaintiffs' said land so leased to defendants; that thereby defendants have rendered all the remainder of plaintiff's lands covered by the lease of no rental value; that except for such acts said lands would be of the rental value of $600 per year; that rents of $350 are due and unpaid, and by reason of said wrongful acts of defendants plaintiff has been damaged $1,500.

Each defendants (appellant) answered by a denial. The trial court found for the plaintiff as against the defendants, that plaintiff was "entitled to the possession of the property described in its complaint, and * * * $1,379.07, as its damage, together with its costs", and rendered judgment accordingly. Appellants complain of the alleged insufficiency of the evidence to prove that the strip of ground next to the railroad switch, which the coal company continued to use after being served with a notice to vacate the leased premises, was covered by the lease. The president and principal stockholder of the Riverside Coal Company, being one of the original lessees, and a defendant in this action, testified that he had lived in that neighborhood since 1877, and that there had been no fence along the east side of the railroad switch "since 1902", but said there had once been a fence running northwest from the warehouse. The vice-president of the plaintiff company, who was also its treasurer and general manager, testified that he had been "on the ground" at its plant since 1878 and became manager in 1911, when his father died, and there had "always" been a board fence along the north side of the leased tract, next to the alley, until after the lease was made, in 1911, and

that defendants then took it down; that there was and is a fence at the east boundary of the leased tract; that after his company acquired the ground, it put a fence at the west end, parallel with the railroad switch, and about three and a half feet from the east rail, which was repaired many times and stood there a good many years until it rotted down; he did not know how long ago, but possibly in 1902 or along there; that a fence ran west from the northwest corner of the warehouse, a distance of about twenty-five feet, to within two or three feet of the switch track, and connected with the fence which ran northwest parallel with the track; that plaintiff used the ground up to within three and a half feet of the rails of the railroad switch. The superintendent of plaintiff company testified that he had held that position for thirty years, and had been connected with the company forty years (the trial was in January, 1920) ; that a fence parallel with the railroad switch, within three and a half feet from the east rail, extended from the alley southeast to a point west of the warehouse for eighteen or twenty years, until it rotted down, and another fence extended west from the northwest corner of the warehouse to the switch. There was also other evidence to the effect that appellants removed the fence along the alley after the lease was made; that, during the term of the lease, they shoveled coal out of cars placed on the switch, and left it piled where it fell until they loaded it into wagons and hauled it to purchasers, and that the only use they made at that time of any land farther from the switch track than the coal was thus thrown in unloading cars was in driving in and turning around, and occasionally in storing carts and trucks; and appellants produced witnesses who testified that in unloading coal from a car, it could not be thrown more than eight feet, and then might roll down the farther side of the pile; and there

was evidence that up to two weeks before the trial, the defendant company continued to unload cars from this switch upon the adjoining ground east of the track, and that piles of the coal thus unloaded spread to a distance east of the switch variously given by different witnesses as from eighteen to sixty feet, and that the company continued to drive in and turn the carts, wagons and trucks on the ground east of the piles of coal. There was also evidence to the effect that, during all the years for which appellants paid rent, they neither unloaded nor stored coal on that part of the ground directly north of the warehouse, and that, except for using that part occasionally as a wagon yard, appellants during all the term of the lease made little use of any ground except what lay west of a line drawn north from the west end of the warehouse.

But the undisputed evidence was that appellee had been in possession under claim of ownership, since 1878, of certain lots numbered 16, 17 and 18, and of all that part of lot No. 15 which adjoined them on the west, except so much, if any, as was occupied by the right of way of the railroad switch; that lot No. 15 was triangular in shape, bordering 11.7 feet on Twenty-ninth street in front and 117.8 feet on an alley in the rear, and being 125 feet deep; that each of the other three lots was thirty feet wide; that the north side of a warehouse extended from the east line of lot No. 18 to the west line of lot No. 16, about forty feet north of Twenty-ninth street, the west end of the warehouse running diagonally southeast, parallel with the railroad switch and about twenty-five or thirty feet from it; and that the railroad switch ran northwest from Twenty-ninth street, near the west line of lot No. 15, at about the same angle as that line.

The following plat is not very accurate but may serve to make this statement more intelligible:

Appellants insist that upon this evidence the trial court was not justified in finding that the description in the lease of the ground covered by it embraced any of the ground near the railroad switch that the Riverside Coal Company continued to occupy and use after the lease was terminated. Counsel point out that the description refers to the leased premises as "the north portion of certain lots * * * lying directly north of the warehouse", and say that no part of lot No. 15 lies "directly north" of the warehouse; and that while lot No. 15 alone adjoins the railroad switch, lands "adjacent to" the switch would not necessarily abut upon it. For convenience, we again set out the description as follows: "The north portion of certain lots adjacent to what is known as the Big Four Switch, lying directly north of the warehouse of said first party, and extending east to a board fence on a line with the east end of said warehouse, the north boundary being the south line of the alley", etc. And we again call attention to the stipulation in the lease that the lessee "agrees to use said land for nothing but the unloading and storing of coal." It will be observed that the description names the north boundary of the leased premises as the line of the alley, the east boundary as

a certain fence, the south boundary as the warehouse, and says the leased land is "adjacent to the switch", but does not otherwise refer to the western boundary, and that the evidence shows that the only part of the premises in dispute which could be actually used in "unloading" cars in the manner shown to have been used by appellants during all the term of the lease for which rent was paid was a narrow strip immediately adjoining the switch, upon which coal could be and was thrown in shoveling it out of the cars. Webster's dictionary gives several definitions of adjacent, among which are "contiguous", and "bordering on", and gives "adjoining" as one of the synonyms. The Standard dictionary includes "adjoining" and "bordering" in its definitions of adjacent, and gives "abutting", "attached", "beside", "conterminous", "contiguous", and "next" (among others) as synonyms. And both dictionaries include "touching" and "adjoining" among their definitions of contiguous. Taking into consideration the enclosure of the ground from the railroad eastward by a fence until it rotted down, the recital in the lease that the ground was to be used for "unloading" coal as well as for storing it, with the fact that in unloading coal by the means used, it could only be thrown a few feet from the railroad track, the recital that the leased premises were "adjacent" to the railroad switch, the fact that while the boundaries on the north, south and east were given, the only reference in the lease to a western boundary was the statement that the ground was adjacent to the switch, and all the circumstances of appellants taking possession and continuing to occupy for unloading and storing coal, during all the years for which they paid rent and afterward, only the narrow strip beside the railroad track upon which coal could be thrown with a shovel and the ground adjoining it over which carts and trucks must be driven

184    SUPREME COURT OF INDIANA,

Riverside Coal Co. *v.* No. Indianapolis, etc., Works—194 Ind. 176.

to carry away the coal, and we think the finding that the Riverside Coal Company continued to hold possession of part of the leased premises after its lease was terminated was amply sustained by the evidence. The description of land leased in a single body or tract, as "lying directly north of the warehouse" did not exclude from the lease a part of the tract that projected west of a line drawn due north from the west side of the warehouse, where other words in the lease referred to such part as being included, and the lessee took possession of it and occupied it for years while paying rent.

The testimony that the ground was fenced and used by plaintiff to within three and a half feet of the east rail of the switch, from about 1880 down to about 1902, and that the fence stood there many years and until it rotted down, and that the original lessees had seen the old fence there (though disputing its exact location) and leased the ground for use in "unloading" coal from cars on the switch, supports the finding that what they leased included ground within eighteen feet of the switch track, which the president of the appellant company, as well as other witnesses, testified it had been occupying after notice to vacate what it held under the lease.

The undisputed evidence was that appellants took possession of all the ground which they held south of the alley, under and pursuant to the lease from appellee, and there was no offer of evidence to the contrary. That being true, the offered evidence to the effect that the railroad company held a ninety-nine year lease on a right of way which extended east of where its track was located was properly rejected. A party who entered into possession under a lease will not be heard, before he shall have surrendered possession, to deny that, at the time the lease was executed,

NOVEMBER TERM, 1923.  185

Riverside Coal Co. *v.* No. Indianapolis, etc., Works—194 Ind. 176.

his lessor had title to the leased tract and every part of it. *Reese* v. *Caffee* (1892), 133 Ind. 14, 18, 32 N. E. 720; *Howe* v. *Gregory, Exrx.* (1891), 2 Ind. App. 477, 481; *Pence* v. *Williams* (1895), 14 Ind. App. 86, 88; *Byrnes* v. *Douglass* (1895), 23 Nev. 83, 42 Pac. 798.

From what has been said it follows that there was competent evidence to support the finding that appellants held possession of a part of the leased premises after their lease was terminated, for which appellee was entitled to recover damages. No question is presented as to whether the recovery was for the right amount, appellants insisting only that no damages at all should have been awarded. And it also follows that evidence of the rental value of the tract extending from the railroad switch eastward, with switching privileges, was properly admitted.

The judgment is affirmed.

### ON PETITION FOR REHEARING.

EWBANK, C. J.—The petition for a rehearing filed by appellants seems to challenge the opinion of this court for not pointing out the reason for which the cause was transferred from the Appellate Court. In its opinion, the Appellate Court had assumed to state a rule of law in terms which the Supreme Court deemed erroneous, and not proper to serve as a guide in deciding similar questions that may arise in other cases. Being convinced that the opinion of that court erroneously declared the law in some particulars, the Supreme Court transferred the case to its own docket. §1394, cl. 2, Burns 1914, Acts 1901 p. 567, §10; *Barnett* v. *Bryce Furnace Co.* (1901), 157 Ind. 572, 62 N. E. 6; *American Quarries Co.* v. *Lay* (1906), 166 Ind. 234, 76 N. E. 517. Having done so, the court proceeded to decide the case as if it had been transferred in any other of the several ways provided by law

(§§1405, 1425, 1429 Burns 1914, Acts 1901 p. 590, Acts 1893 p. 293, Acts 1893 p. 29) for removing a case from one court to the other. By such an order of transfer "the judgment of the Appellate Court is vacated", and, in deciding the case, neither criticism of, nor reference to, the opinion of the other court is necessary. §1394, cl. 2, Burns 1914, *supra.*

The petition for a rehearing is overruled.