DOWTY *v.* STATE OF INDIANA.

[No. 24,957. Filed February 16, 1932.]

*Eichhorn, Gordon & Edris,* for appellant.

*Arthur L. Gilliom,* Attorney-General, and *Edward J. Lennon, Jr.,* Deputy Attorney-General, for the State.

MYERS, J.—Appellant, in the Allen Circuit Court, upon an indictment in three counts, was tried and convicted of arson. §2441 Burns 1926. On appeal to this court, the only rulings of the lower court properly assigned as independent errors are the overruling of appellant's motion to quash each count of the indictment and the overruling of his motion for a new trial. The overruling of his motion to suppress evidence and his motion requesting the court to designate upon which count or counts of the indictment he was found guilty are not questions for independent assignments of error, but should be assigned as causes for a new trial. §2325 Burns 1926, cl. 1; *Chappelle* v. *State* (1925), 196 Ind. 640, 149 N. E. 163.

Counsel for appellant, in their oral argument, stated that they were "not contending there was any error in overruling the motion to quash the first count." At the same time, the Attorney-General orally conceded that a conviction on counts 2 and 3 could not be sustained. Consequently, our attention will be limited to the questions in support of the motion for a new trial as applied

to the charge in the first count. It, in substance, stated that William Dowty, on a stated date, in Allen County, Indiana, "did then and there feloniously, wilfully and maliciously, set fire to and burn a certain store building then and there situate, of the value of $2,000.00, then and there the property of other persons, to wit, the property of George Ertel and Fay Ertel," to the damage thereof in the sum of $500.

That part of the statute at present material provides that "Whoever wilfully and maliciously burns . . . any dwelling house or other building . . . whether the building be used or intended for a dwelling house or for any other purpose . . . the property so burned . . . being of the value of twenty dollars or upwards, and being the property of another, . . . is guilty of arson." §2441, *supra.*

The motion to suppress evidence tendered an issue of fact. The court heard evidence upon that issue and overruled the motion. The evidence upon which the court acted in this matter is not before us.

There being no showing to the contrary, we must presume that the court ruled correctly. *Straw* v. *State* (1925), 197 Ind. 606, 149 N. E. 430, 151 N. E. 695; *Coleman* v. *State* (1925), 196 Ind. 649, 149 N. E. 162; *Gielow* v. *State* (1926), 198 Ind. 248, 153 N. E. 409.

The merits of this case were tried by the court. After the court had announced its findings, but before judgment, appellant requested the court to designate the count or counts of the indictment upon which he was found guilty. The court denied this request and thereafter rendered judgment on the general finding of guilty. An examination of the record discloses that·the ruling on the foregoing request was not made a cause for a new trial. The suggested question on that ruling is not before us for decision.

Appellant next insists that there was a failure to prove

ownership of the property burned as charged in the indictment, and hence a fatal variance. The allegation in the indictment to which appellant refers was: "to wit, the property of George Ertel and Fay Ertel." From the evidence we learn that George Ertel and Fay Ertel mentioned in the indictment were husband and wife and, at the time of the fire, they were occupying a part of the building. At that time George Ertel, Sr., was the fee owner of the lot and building burned, but was not then and had not been in possession of the same since the year 1921, when he rented the building to George and Fay Ertel, his son and daughter-in-law, for $45 per month. These lessees sublet a part of the building to appellant for a monthly rental of $80, and another part to George Roy for $25 a month. Again looking to the statute, and to that part at this time pertinent—"the property so burned or attempted to be burned being of the value of twenty dollars or upwards, and being the property of another"—it will be noticed that the word "property" seems to have been advisedly used, it being a word of broad application. It embraces every species of valuable right and interest in real and personal property, easements, franchises and incorporeal hereditaments. §900 Burns 1926; *Figg* v. *Snook* (1857), 9 Ind. 202; *Aurora Nat. Bank* v. *Black* (1891), 129 Ind. 595, 29 N. E. 396; *Adams* v. *Merrill* (1908), 45 Ind. App. 315, 85 N. E. 114, 87 N. E. 36; *Metropolitan, etc., R. Co.* v. *Chicago, etc., R. Co.* (1877), 87 Ill. 317, 324. It extends to the right of a person over a thing, although such right may be indefinite in point of time or user. As applied to the statute defining the crime of arson, the word property serves to cover the things in the statute particularized, whether the right thereto be absolute or qualified.

The statute defines arson as an offense against the property as well as the possession. *Garrett* v. *State*

(1887), 109 Ind. 527, 10 N. E. 570; *Kruger* v. *State* (1893), 135 Ind. 573, 35 N. E. 1019. Unquestionably, at the time of the fire, the Ertels named in the indictment had a property interest, sometimes referred to as a "leasehold estate," in the fire-damaged building. That part of the building in the possession of appellant at the time of the fire was that of a tenant by lease from George and Fay Ertel, and, applying the law of landlord and tenant, he will not be heard to question his lessor's title or authority to sublet. *Reese* v. *Caffee* (1892), 133 Ind. 14, 32 N. E. 720; *Riverside Coal Co.* v. *No. Indianapolis, etc., Works* (1923), 194 Ind. 176, 184, 139 N. E. 674, 142 N. E. 377. As we see this case, the evidence shows that the Ertels named in the indictment had an interest in the building partly burned which must be regarded as property, and sufficient to sustain the allegation in the indictment and to meet the statutory phrase, "the property of another."

The evidence is challenged as being insufficient to sustain the court's finding. This question has given us some concern. We not only have read carefully the recitals of the evidence in the briefs of counsel for appellant and appellee, but we have read the evidence in the record as well. We will not take the space to include in this opinion any more of it than is absolutely necessary to give the reader a fair knowledge of the State's case. The frame building alleged to have been set on fire was located at the northeast corner of Gay and Creighton Streets in the city of Fort Wayne. The east portion thereof was two-story, and the part occupied by appellant as a grocery and meat market after August 7, 1923, was one-story. The ground floor of the two-story part was occupied by George Roy for the sale of auto accessories, and the second story by George Ertel as a workshop. The fire was discovered on Monday morning, January 28, 1924, at about 2:40 o'clock by a taxi driver,

who reported his observations to the fire department. The firemen, on reaching the building, found all of the outside doors locked.  They forced a door on the Creighton Street side, and, on entering the building, found a paper basket in the small office on the south side of the room on fire and fire running up the north wall of the store room directly above boxes on fire in the basement; the joists at that point were burning.  These boxes were about five or six feet from the furnace; there was no fire in the furnace.  It was cold.  There was also fire in the garret over the meat market, estimated from one to three places burning from buckets and a can each half filled with coal oil, about five or six feet apart.  From each of these vessels burlap saturated with coal oil was "snaked" around in the garret.  The rafters had caught on fire.  There is no evidence of the damage in dollars and cents caused by the fire.  The grocery department and meat market were separated by a board partition with a double door opening.  Near this partition at one time, a flue had been removed, leaving a hole in the ceiling approximately 16 inches square, which had been closed by a sheet of tin nailed over it.  Firemen testified that the tin had been removed and flames could be seen through the hole in the ceiling.

On Sunday, the day before the fire, appellant, with two other persons, left the building about noon, and Dowty locked the door.  There was evidence by two persons besides himself that, at about 3 o'clock that afternoon, they left Fort Wayne in an automobile and drove to Coldwater, Michigan, arriving there about 6 o'clock, talked with real estate agents there for about an hour, then drove six miles to Quincy, Michigan, where they remained all night; they left Quincy about 8 o'clock Monday morning and drove back to Coldwater; left Coldwater at 5 o'clock in the evening, arriving at Fort Wayne about 8:30; about Coldwater there were considerable

snow drifts and ice on the road; from Fort Wayne to Coldwater is about 75 miles; on his return home, he was told about the fire; he and his wife then went to the office of a Mr. Smith, who had accompanied him to Coldwater; there he was informed that the police were looking for him; he went home and to bed, where he remained until about 2 o'clock in the morning, then to a hotel in Fort Wayne, where he registered under an assumed name; he gave a reasonable explanation for so acting—avoiding the police until morning. About eight o'clock Tuesday morning, as he was leaving the hotel, he was arrested and taken to the police station and, after questioning, liberated; from the hotel, he telephoned to a Mr. Baumgartner at Bluffton about the fire and requested him to come and see about it, inasmuch as he, on January 21, had assigned the insurance policies to him in accordance with a bill of sale to him for the stock and fixtures. The purpose of the bill of sale was to enable Baumgartner to transfer the stock of goods and fixtures to a Mr. Malcolm of Michigan in trade for a farm, and thus obviate any objection by Malcolm to receiving the merchandise and fixtures from Dowty on account of a judgment against the latter in "Wells County." The lowest fair cash value placed upon the stock was $4,000, and, on the stock and fixtures, $7,000 to $7,500. Appellant carried fire insurance on his stock amounting to $3,500, and on the fixtures, $2,500.

On the Monday afternoon of the fire, two police officers went to the home of a lady in Fort Wayne who accompanied appellant on the Michigan trip. They unlocked the door, went into the house and into the cellar. One only testified, who said he had seen three or four sacks of potatoes, "a lot of canned goods and found some cartons there, boxes with Dowty's name on it . . . there must have been three or four." The witness did not look at the cans and could not tell whether it was home-

canned goods or not. Two witnesses testified that the canned goods referred to by the officers were home-canned fruit, most of which was canned by the mother of the lady occupying the house, and the sacks of potatoes were given to her by her father. The undisputed evidence was that the reputation of appellant in the city of Fort Wayne for honesty and integrity was good.

Considering the evidence most favorable to the State, it does establish the fact of incendiarism, but does it point unerringly to the accused as the incendiary? There is no evidence justifying an inference that he caused the unlawful act to be done by another. The State's brief does not attempt to meet the contention of appellant on the evidence. This court will not weigh the evidence for the purpose of determining the positiveness of the facts proved. When the sufficiency of circumstantial evidence is in question, as here, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court. *Nelson* v. *State* (1928), 200 Ind. 292, 163 N. E. 95; *Faulkenberg* v. *State* (1926), 197 Ind. 491, 151 N. E. 382; *Henry* v. *State* (1925), 196 Ind. 14, 20, 146 N. E. 822; *Hiner* v. *State* (1925), 196 Ind. 594, 149 N. E. 168; *Falk* v. *State* (1914), 182 Ind. 317, 106 N. E. 354; *Cavender* v. *State* (1890), 126 Ind. 47, 25 N. E. 875.

The Attorney-General, in his oral argument, relied entirely upon the evidence with reference to the canned fruit, the assignment of the insurance policies and the purported statement of the accused at the time of making these assignments, that, in case of a fire, unless they were assigned, he would have no insurance. The statement was perfectly natural for one to make under the admitted fact that the title of the prop-

erty insured had been transferred. The evidence pertaining to the canned fruit on behalf of the State—exceedingly indefinite and evidently not regarded by the officers at the time of any particular consequence—can hardly be regarded as a circumstance upon which to base the inference of an intention to do a felonious act.

We are not advised by the evidence that appellant did or did not, on his return home, give any attention as to the result of the fire. He was not interrogated on that subject. He did give an account of his activities after his return to Fort Wayne until he was arrested, but made no mention of visiting the scene of the fire. This omission might be the basis for an inference, but, under the present state of the record, we would not be justified in drawing it. It seems to us his regard for what had happened would be a circumstance for the trial court or jury to consider, in the light of what an ordinary person would naturally do on learning of a fire involving his property of the value of $7,000 to $7,500. Whatever may be the fact in that respect, neither party seems to have regarded it as important. The State does not refer to it in its brief nor make it a point in the oral argument. As said by counsel for appellant, all of the evidence for the State may be true, and yet the accused be innocent of the charge. In order to sustain the finding and judgment of the trial court, we must be able to say that the evidentiary facts warranted the inference that appellant was the incendiary, and this we cannot do.

Judgment reversed, with instructions to the court below to sustain appellant's motion for a new trial, and for further proceedings not inconsistent with this opinion.