MANDICH *v.* STATE OF INDIANA

[No. 28,131. Filed April 16, 1946.]

*Harry Long* and *Nick Kosanovich,* both of Gary, for appellant.

*James A. Emmert,* Attorney General, and *Frank E. Coughlin,* First Assistant Attorney General, for the State.

O'MALLEY, J.—The appellant was charged with murder in the first degree. There was trial by a jury and a verdict finding the appellant guilty of murder in the second degree. The error assigned is the overruling of the motion for a new trial. That motion was lengthy and set out 67 claims of error in the trial. Many of these are grouped for the purpose of examination and explanation. Included in the specifications is the claim that the evidence is not sufficient to sustain the verdict.

The evidence most favorable to the appellee discloses that the appellant was the sister-in-law of the victim; that for a number of years she had loaned money to the decedent in order that he and her sister might have sufficient to maintain themselves; that this continued until there was an indebtedness of $735.00 and none of this had been paid in 1936 when the sister and the decedent purchased a house at 3736 Madison Street, Gary, Indiana; that the appellant complained that she should be repaid without delay, and finally the interest of the decedent and his wife in the Madison Street house was turned over to her with the understanding that title would be transferred back upon the payment of the indebtedness; that in 1940 the decedent and his wife separated and the wife went to live in the home of her first husband; that the decedent continued to live in the front part of the Madison Street house while the rear was being rented; and that at the time of the

shooting the rear of this house was occupied by a Mrs. Parker and her two small children.

The evidence further discloses that the appellant was receiving no return on either the principal or interest of her investment in the house; that she tried to have the decedent evicted but did not seem to be able to do so, and finally that she went to the home where her sister was living and proposed that they both go to the Madison Street property and take possession thereof and throw out the furnishings which belonged to the decedent; that they did go to the house and gained entrance through the rear part; that they immediately began to move the decedent's furniture onto the front porch; that before the furniture was completely moved, the sister of the appellant left to go back to her home in order to prepare and serve a meal to her young son and to her first husband; that after the sister had gone, the decedent came to the Madison Street house and presented himself at the door thereof; that while he was standing at the door words passed between him and the appellant; that she then told him that she was the boss and that he could not enter; that he shook the storm door and attempted to enter and at that time the glass in the door was broken and the neighbors, including Mrs. Parker, heard the crash of glass and a second crash which sounded like the backfiring of an automobile.

From the evidence the jury also must have believed that when Mike Ulemek, the decedent, came down the street and went upon the porch of his home and approached the front door, the appellant came and stood in that doorway and in a short time the decedent fell to the porch floor; that the appellant slammed the door, tried to pull down the shade and then disappeared from the doorway and Mike Ulemek did not get up.

The evidence further showed that Ulemek had been shot through the heart; that the bullet entered at a lower corner of the breast bone and went into the heart, and down through the diaphragm into the abdomen; that the glass in the storm door was broken from the inside; that Mrs. Mandich left this house by the back way and went to the home of her sister and finally to her own home. There was evidence that she had threatened to kill the decedent if he did not get out of her house; and that no other person entered or left the Ulemek home by way of the front door. There was evidence of the two crashes while the appellant was in the front of the house. She was identified as the person in front of him at the time he fell backward on the porch with a bullet through his heart. It could have been inferred that no other person was near; that the appellant was at the front door and very close to the decedent at the time he was shot; and that the shot came from a revolver in the hands of the appellant.

The appellant makes much of the facts that the gun was never found and that no direct evidence was offered to show that the appellant had ever owned or possessed a weapon of the calibre used in the shooting. The appellant also asks us to examine the evidence to determine whether or not it overcomes every hypothesis consistent with the innocence of the appellant.

In the trial court the jury and finally the judge must weigh the evidence with that rule in mind, but in this court a different rule applies. Here, if there is evidence of each essential fact in the chain of circumstances, we cannot weigh that evidence.

The case of *Osbon* v. *State* (1938), 213 Ind. 413, 13 N. E. (2d) 223, on which the appellant relies, is

of no assistance. There the court plainly stated that this court will not weigh the evidence, but will reverse when there is no evidence upon which the conviction can stand. The correct rule of law was stated in *Dowty* v. *State* (1932), 203 Ind. 228, 235, 179 N. E. 720, 723, in the following language:

> "When the sufficiency of circumstantial evidence is in question, as here, we examine it carefully, not for the purpose of finding whether or not it is adequate to overcome every reasonable hypothesis of innocence, but with the view of deciding whether an inference may be reasonably drawn therefrom tending to support the finding of the trial court."

In *Gears* v. *State* (1932), 203 Ind. 380, 394, 180 N. E. 585, 590, this court had before it a claim similar to the one in the instant case. In that case comment was made on prior decisions bearing on the method and measure used in this court in evaluating circumstantial evidence. As a part of the explanation of the governing rule this court set out a quotation from *Wrassman* v. *State* (1921), 191 Ind. 399, 402, 132 N. E. 673, which is as follows:

> " 'If the language used by Judge Mitchell in the Cavender case was intended to convey the impression that where there are two reasonable hypotheses arising from circumstantial evidence, one of which is innocence and the other guilt, that it is the duty of a court of review to draw the inference of innocence, then this language must be disapproved. If it is meant to be a pronouncement of the law which should govern juries and trial courts, then it is approved.' "

In *Finch* v. *State* (1944), 222 Ind. 633, 638, 56 N. E. (2d) 851, 853, 854, this court, in commenting on a claim similar to that in the instant case, made this statement:

"It is true that the jury and the trial court must be guided by the rule that to sustain a conviction circumstantial evidence must be such as to exclude every reasonable hypothesis of innocence. This rule has no application upon appeal. The jury is the sole judge as to whether an explanation of the circumstances upon some other theory than that of guilt is sufficiently strong to raise a reasonable doubt of guilt."

The evidence, though circumstantial, together with the inferences which can be drawn therefrom are sufficient to support the verdict.

Complaint is made that the court should have given instructions numbered 11 and 20 tendered by the appellant. The court gave its own instruction number 18 which covered every element contained in the two instructions referred to above. No error was committed in refusing to give instructions 11 and 20 tendered by the defendant in the trial court.

Appellant's tendered instruction number 23 stated that there was a complete lack of direct evidence from an eye witness that the appellant either owned or possessed the pistol which was used in this case or that she fired the fatal shot. It then stated that the State was depending on circumstantial evidence to prove such facts. The instruction continued "but you can not infer from the fact, if you believe beyond a reasonable doubt that it is a fact, that the defendant was present at a time when the deceased fell, that the defendant shot and killed him or that she had in her possession a gun at any time." This instruction has many infirmities. It singled out the presence of the accused and the falling of the decedent, and would have told the jury how much weight could be given to that particular evidence. It would invade the province of the jury in such respect. It is argu-

mentative in that it would single out items of evidence freed from their surroundings and evaluate them. On that basis one could single out each item of evidence and disassociate it from its setting and thus set justice at naught.

Furthermore, it is not necessary to prove each fact in a criminal case beyond a reasonable doubt. It is the essential elements of the crime which must be so proved. The rule is stated in *Scherer* v. *State* (1919), 188 Ind. 14, 18, 121 N. E. 369, 370, in the following language:

" 'While it is necessary that every essential element of the crime charged against the defendant should be proved by the evidence beyond a reasonable doubt, this does not mean that all the incidental or subsidiary facts should be proved beyond a reasonable doubt. Evidence is not to be considered in fragmentary parts, and as each fact or circumstance stood apart from the others, but the entire evidence is to be considered. Acts when considered apart from all other evidence may appear innocent, but when considered with other evidence may import guilt.' "

The rule in regard to the method and manner of considering items of evidence has been correctly stated in *Gears* v. *State, supra,* at page 396, as follows:

"By arbitrarily breaking up the evidence into separate bits, and by insisting that the mental processes of the jurors, as applied to these bits of evidence, must meet an excessively refined analytical test, we might conclude that there are theoretical gaps in the evidence. It is necessary, however, that we leave to the sound judgment of the jury some margin for logical grouping of facts for the purpose of drawing inferences of fact, and for the utilization of these inferences of fact with other facts as the basis of further inferences of fact."

In *Diblee* v. *State* (1931), 202 Ind. 571, 177 N. E. 261, on which the appellant relies to support her contention that this instruction should have been given, the court was requested to limit specific testimony to a particular purpose. This court correctly held that the defendant was entitled to have the jury instructed that the evidence was admitted for a limited purpose. That case does not support the contention of the appellant.

Error is also claimed because the court gave on its own motion instructions numbered 5, 15 and 17. As to number 5, the court did not err. The gist of appellant's argument in support of her contention is that direct evidence of the possession of the gun and of the shooting was necessary, and that this instruction was erroneous in stating that the applicable rule of law was otherwise. In that the appellant is in error. In the case of *Karnes* v. *Commonwealth* (1919), 125 Va. 758, 99 S. E. 562, it was not decided that the facts of ownership and possession of the gun and the actual shooting could not be proved by circumstantial evidence. There it was held that there was insufficient evidence to make a case because of the lack of direct or circumstantial evidence from which the points might be inferred.

Instruction number 15 is challenged because it stated that the jury should, if they have no well defined opinion of the law, give respectful consideration to the instructions of the court in determining the law. The trial court is bound by the decisions of the Supreme Court. It has been held that the jury should give respectful consideration to the decisions of the Supreme Court in determining the law. *Trainer* v. *State* (1926), 198 Ind. 502, 154 N. E. 273. The court, in its instructions, is required to follow the law as announced

by this court. In so instructing the jury, the court in the instant case did no more than to state that respectful consideration should be given to the decisions of the Supreme Court. If the instructions are to serve no purpose, they should not be given. If they have any place in the trial of a criminal case they must be entitled to respectful consideration. That does not make them binding on the conscience of the jurors, but it does give to the instructions a proper setting and purpose.

Instruction 17 is objected to because it stated that no greater degree of certainty is required in proof where the evidence is all circumstantial than where it is direct. It is argued that under the former kind of evidence the proof must be such as to exclude every reasonable hypothesis of the innocence of the defendant, and as a result a greater degree of certainty in proof is required under this rule.

Every defendant in a criminal case must be proved guilty beyond a reasonable doubt. In cases depending on circumstantial evidence the rule is stated in a different manner but it means the same thing. In *Gears* v. *State, supra,* this court discussed this very point. There on pp. 393 and 394 it said:

> "Appellant makes the point that 'circumstantial evidence, to sustain a conviction must exclude every reasonable hypothesis of the innocence of the accused.' That is a correct statement of a rule for the guidance of the trial court, and is simply another form of the rule that the jury must be convinced beyond a reasonable doubt of the guilt of a defendant. For if, after considering all the evidence, a juror's mind entertains reasonably a hypothesis of innocence, it cannot be said that his mind is convinced of the guilt of the defendant beyond a reasonable doubt."

This has been declared to be the law of Illinois [*The People* v. *Buskievich* (1928), 330 Ill. 532, 162 N. E.

196], and such rule is supported by § 16 of Underhill's Criminal Evidence (4th ed.). The giving of instruction 17 on the motion of the court was not error.

Complaint is made that the court's instruction 18 is not reconcilable with instruction 17 above referred to. Since instruction 18 merely stated that "where circumstantial evidence is relied upon for conviction it is not sufficient that it coincides with the hypothesis of the guilt of the accused but the circumstances must be of so conclusive a character and point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis of his innocence" (Appellant's b. pp. 334-5), it merely stated the same rule that proof of guilt must be beyond a reasonable doubt but in the form used for cases which depend on circumstantial evidence. In view of the explanation made above, it can readily be seen that there is no conflict in these instructions. However, there is no objection to either instruction which could be said to raise the question set forth.

The appellant puts great stress upon a claim of error arising out of the admission in evidence of a piece of glass which was found in the pocketbook of the appellant. It is also asserted that it was error to permit an agent of the Federal Bureau of Investigation to detail his expert knowledge of this piece of glass and a piece taken from the storm door of the home of the decedent. It is claimed that because the expert could not say that the piece found in the pocketbook had actually been a part of the broken glass of the storm door, that it should not have been received in evidence. The testimony given by this expert was to the effect that it was exactly like the glass left in the door and came from that piece or one exactly like it. The evidence was admissible and the lack of cer-

tainty went to the weight of the evidence. Other questions are raised on the introduction of evidence, but even if it be admitted that the lower court committed error in each of the claimed instances, no sufficient basis for a reversal has been shown. None of the claims pertain to matters that were material or that could have, in any way, prejudiced the rights of the appellant.

Error is likewise claimed because of statements of the prosecuting attorney. In no instance was there any harm shown. In fact the statements thus made were of minor importance if they were of any importance at all.

After a careful examination of the claimed errors, we are of the opinion that no reversible error has been shown. The judgment of the lower court is therefore affirmed.

Note.—Reported in 66 N. E. (2d) 69.