Reginald ANDERSON, Appellant,

v.

STATE of Indiana, Appellee.

No. 980S382.

Supreme Court of Indiana.

Oct. 14, 1981.

Ellen S. Podgor, Crown Point, for appellant.

Theodore L. Sendak, Atty. Gen., George B. Huff, Jr., Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Reginald Anderson, the appellant, was charged with burglary, a class B felony, in violation of Ind.Code § 35–43–2–1, and was convicted of the charge after a jury trial. In addition, the State sought to have Anderson sentenced as an habitual offender pursuant to Ind.Code § 35–50–2–8. The jury found that Anderson was an habitual offender. The trial court sentenced him to imprisonment for ten years on the burglary charge and a "consecutive" term of thirty years on the habitual offender finding, making a total of forty years.

## I.

Anderson was charged with breaking and entering a dwelling with intent to commit theft of property.

The first claim is that there was insufficient evidence of his intent to commit a felony and that the trial court therefore erred in overruling his motion for a directed verdict. The burglary statute provides:

"A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon or if the building or structure is a dwelling, and a class A felony if it results in either bodily injury or serious bodily injury to any other person."

Anderson argues that there was no evidence that he intended to commit a theft and no evidence that any things were taken from the house that was broken into. He asserts that the evidence established only

that there was a breaking and entering of a dwelling house, and that he was found by police near the house. Indeed, Anderson argues, the fact that he left the dwelling without taking anything demonstrated the absence of the intent to commit a felony.

Two cases have held that convictions for burglary could not be sustained merely by evidence of breaking and entering or entry without consent: *Faulkner v. State*, (1973) 260 Ind. 82, 292 N.E.2d 594; and *Crawford v. State*, (1968) 251 Ind. 437, 241 N.E.2d 795. *Faulkner*, Anderson acknowledges, was expressly overruled in *Carter v. State*, (1976) 265 Ind. 535, 356 N.E.2d 220, to the extent that it did not permit an inference of specific intent from the breaking and entering of a building at 2:00 a. m. by a defendant armed with a revolver. He urges, however, that since no weapon was involved in the breaking and entering here, the *Faulkner* rationale that proof of the breaking and entering element is not sufficient to establish proof of the intent element should apply.

Similarly, in *Crawford v. State, supra,* this Court held that an inference of intent to commit a felony could not be drawn merely from the fact that a defendant was in a garage without the consent of the owner or manager. *Crawford* was expressly overruled (*Lisenko v. State*, [1976] 265 Ind. 488, 355 N.E.2d 841) to the extent that it did not permit an inference of specific intent from defendants' failure to explain their presence at 4:00 a. m. in a building to which they gained entry by prying open a door, and from their statement to a police officer, who responded to an alarm, that they "gave up." Anderson urges that since no statement was made in his case, the rationale of *Crawford* should apply.

We agree that the mere breaking and entering of a dwelling does not constitute evidence of intent to commit a felony. But the inferences permitted in *Carter, supra* and *Lisenko, supra*, constitute circumstantial evidence that goes beyond the mere fact of breaking and entering and may support the intent element. The record in this case supports even more than the indirect

inferences permitted in *Carter* and *Lisenko.* Joe Tillman, a fifteen-year-old boy who lived with his family in the house Anderson entered, gave the following testimony: He was at home alone in his upstairs bedroom when he heard the sound of breaking glass. He called his aunt and the police, procured a gun from his mother's bedroom, and hid in his closet. He heard one intruder come upstairs. This intruder said, "look, there's a big old T.V., too heavy to carry." A second voice downstairs said, "go to the next room," and then the person upstairs said, "ain't nothing but a bunch of dolls in here."

■ On review of claims of insufficient evidence, this Court does not weigh the evidence or resolve questions or credibility but looks to the evidence and reasonable inferences therefrom that support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer. that appellant was guilty beyond a reasonable doubt. *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657; *Taylor v. State*, (1973) 260 Ind. 64, 291 N.E.2d 890.

■ The evidence given by Joe Tillman was sufficient to support the inference that Anderson, who was seen by Tillman in his bedroom and identified by him shortly after he and his accomplice fled the house, intended to commit a felony—theft—upon breaking and entering the Tillman house. The trial court did not err in denying the motion for a directed verdict.

## II.

Anderson's next two issues, which we combine for review, concern the claims that the evidence on the habitual offender allegation was inadmissible, that the State failed to establish a prima facie case that he was an habitual offender, and that the trial court erred in denying a directed verdict on the question, because the testimony and documentary evidence of his prior felony convictions did not adequately identify him as an habitual offender, citing *Smith v.*

*State*, (1962) 243 Ind. 74, 181 N.E.2d 520. The statute provides:

"(a) The state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two prior unrelated felony convictions. A person who is found to be an habitual offender shall be imprisoned for an additional fixed term of thirty years, to be added to the fixed term of imprisonment imposed under section 3, 4, 5, 6, or 7 of this chapter.

(b) After he has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction, a person has accumulated two prior unrelated felony convictions. However, a conviction does not count, for purposes of this subsection, if:

(1) It has been set aside; or

(2) It is one for which the person has been pardoned.

(c) If the person was convicted of the felony in a jury trial, the jury shall reconvene for the sentencing hearing; if the trial was to the court, or the judgment was entered on a guilty plea, the court alone shall conduct the sentencing hearing, under IC 35–4.1–4–3.

(d) The jury (if the hearing is by jury), or the court (if the hearing is to the court alone), may find that the person is an habitual offender only if the state has proved beyond a reasonable doubt that the person had accumulated two prior unrelated felony convictions." Ind.Code § 35–50–2–8.

The State alleged two prior felony convictions, a 1974 conviction for entering with intent to commit a felony and inflicting injury upon a police officer, and a 1975 conviction for robbery.

The State sought to prove the 1974 conviction by introducing, over the defendant's objection, the following: Exhibit 1, a copy of an information charging Reginald Anderson with burglary and inflicting injury upon a police officer, and containing the following certification:

"Superior Court of Lake County, Criminal Division—I hereby certify that the foregoing is a true copy of the original on file in this court and cause.

Nick Krochta, Clerk

By Marlene Gooch, Deputy Clerk

Date ___ December 12, 1979 ___ "

This statement is signed by Marlene Gooch. Exhibit 2, a copy of an order by Judge Clement accepting Reginald Anderson's plea of guilty certified in the same form as Exhibit 1. Exhibit 3, a copy of an order by Judge Clement sentencing Reginald Anderson on each count, certified in the same form as Exhibit 1. All three Exhibits bore the same criminal case number. In addition, the prosecuting attorney who was assigned to the 1974 case testified that he was present when Reginald Anderson entered his guilty plea and when he was sentenced on the charges referred to in Exhibits 1, 2 and 3. He identified the appellant as the same Reginald Anderson who was convicted in the 1974 case.

The State sought to prove the 1975 robbery conviction by the following evidence: Exhibit 4, a copy of an information in Marion County Criminal Court charging Reginald Anderson with robbery, stamped "Official Certified Copy, Bernard J. Gohmann, Clerk of Courts True and Complete," signed by a deputy clerk of court; Exhibit 5, a copy of an order by Judge Dougherty, Criminal Court of Marion County, accepting Reginald Anderson's plea of guilty to the charge of robbery, stamped with the same certification as on Exhibit 4; and Exhibit 6, a copy of an order of Judge Dougherty sentencing Reginald Anderson on the charge, stamped with the same certification as on Exhibit 4. In addition, the State introduced Exhibit 7, consisting of a notarized affidavit signed by Edward Jones, keeper of the Records for the Indiana State Prison, certifying that an attached order of commitment, a photograph, and fingerprints were true and correct copies of the record of Reginald Anderson. The State also introduced Exhibit 8, a set of fingerprints taken from the appellant on the day of the hearing on the habitual offender count by Kenneth Roberts.

In addition, the State called Officer Wleklinski, who was in charge of the Lake County Crime Laboratory. Wleklinski testified that the fingerprints in Exhibit 7 belonged to the same person whose prints were on Exhibit 8.

Anderson argues that State's Exhibits 1 through 8 were inadmissible because improperly authenticated under Ind.R.Tr.P. 44, which provides in pertinent part:

"(A) Authentication.

(1) Domestic. An official record kept within the United States, or any state, district, commonwealth, territory, or insular possession thereof, or within the Panama Canal Zone, the Trust Territory of the Pacific Islands, or the Ryukyu Islands, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy. Such publication or copy need not be accompanied by proof that such officer has the custody. Proof that such officer does or does not have custody of the record may be made by the certificate of a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office."

and under Ind.Code § 34–1–17–7:

"Exemplifications or copies of records, and records of deeds and other instruments, or of office books or parts thereof, and official bonds which are kept in any public office in this state, shall be proved or admitted as legal evidence in any court or office in this state, by the attestation of the keeper of said records, or books, deeds or other instruments, or official bonds, that the same are true and complete copies of the records, bonds, instruments or books, or parts thereof, in his custody, and the seal .of office of said keeper thereto annexed if there be a seal, and if there be no official seal, there shall be attached to such attestation, the certificate of the clerk, and the seal of the circuit or superior court of the proper county where such keeper resides, that such attestation is made by the proper officer."

Anderson asserts that Exhibits 1, 2, and 3 have no court seal on or near the Clerk's certification; that the deputy clerk did not state that she is the custodian of the court records or that the records are "full and complete" copies; and that the judge did not authenticate the records. He also appears to argue that the documents can only be admitted through the testimony of a keeper of the records.

Exhibits 4, 5 and 6, although containing certifications that they are "true and complete", were not offered through the testimony of the keeper of the records, and contained no statement that the clerk was the keeper of the records involved.

■ Exhibits 1, 2 and 3 were admissible. They were properly authenticated by the stamp of the clerk of court. We have held, in *Griffin v. State*, (1981) Ind., 415 N.E.2d 60, that copies of a probable cause affidavit, an information, and a criminal docket sheet showing that a defendant pled guilty to the charge and that the trial judge accepted the plea, all bearing the same circuit court cause number and certified by the circuit court clerk as being true and complete copies of the records of the case were sufficient to prove a conviction.

The requirement of a seal of office of the keeper of records is satisfied by the heading "Superior Court of Lake County, Criminal Division". The absence of the word "complete" in the certifications does not render the copies inadmissible. The statute's requirement that the copies be complete is satisfied by the language of the certification, which states that the copy is a "true copy of *the* original on file in this court." Since there is no claim that the originals contain more than is contained in the copies, we can presume that whatever is in the original is evidenced in the copies.

■ Finally, neither the statute nor the rule requires the copies to be authenticated through the testimony of the keeper of the records. Copies properly attested to by the officer having legal custody or his·deputy are self-authenticating.

Exhibits 4, 5, 6 and 7 were also admissible for the reasons discussed above.

■ Exhibit 8 was admissible through the testimony of Officer Wleklinski. Although he did not actually take the impressions from Anderson's hand, he was present when they were taken, and he was subject to cross-examination as to their authenticity.

■ The documents were admissible and the State proved a sufficient connection between the documents and the defendant through the testimony of the prosecutor and Officer Wleklinski so that the court properly denied the motion for a directed verdict. There was sufficient evidence from which the jury could have found that Anderson was an habitual offender.

### III.

Anderson next contends that the habitual offender statute, Ind.Code § 35–50–2–8, is unconstitutional because it permits the trial court to consider the same aggravating factors in sentencing on the underlying felony and in determination of whether a defendant is an habitual offender, thereby punishing him twice for the same offense.

■ Initially, Anderson argues that his sentence was improper in that he was sentenced to "ten years on Count 1 and a consecutive term of thirty years on Count 2, making a total of 40 years . . . ." citing *Eldridge v. State*, (1977) 266 Ind. 134, 361 N.E.2d 155. *Eldridge* held that the penalty for being an habitual offender was not an additional sentence but rather an alternative sentence of life for the crime charged. The case was decided under a prior statute, Ind.Code § 35–8–8–2 (Burns 1975, repealed).

In *Page v. State*, (1979) Ind., 395 N.E.2d 235, we determined a claim that a sentence of twenty years for robbery and an additional term of thirty years for being an habitual offender was proper. We said, "[t]he legislature was within its province in changing the manner of sentencing . . . and the trial court properly sentenced the defendant under the amended legislation." *Id.* at 239.

There was no error in sentencing.

Anderson's constitutional claim is that in sentencing a defendant on the underlying felony, the court may consider his past criminal record and this same record is the basis for an enhanced sentence under the habitual offender statute. This constitutes being punished twice for the same offense in violation of Ind.Const. Article I, § 14, he contends.

We examined this claim recently and rejected the argument that a defendant is doubly punished under the habitual offender scheme for the crime charged. Sentencing under the scheme involves neither reprosecution for the same offense after acquittal, reprosecution for the same offense after conviction, nor multiple punishment for the same offense, which the double jeopardy clause prevents. *Elmore v. State*, (1978) 269 Ind. 532, 382 N.E.2d 893. Rather it calls for an enhanced sentence for the last crime committed, and is neither a separate criminal charge nor an additional penalty for earlier crimes. *Wise v. State*, (1980) Ind., 400 N.E.2d 114.

■ The use of prior convictions to enhance the sentence for the latest crime as well as to constitute an aggravating factor in the underlying sentence does not violate the ban on double jeopardy. ·*Griffin v. State*, (1981) Ind., 415 N.E.2d 60; *Ross v. State*, (1980) Ind., 413 N.E.2d 252.

The statute is not unconstitutional.

### IV.

■ Finally, Anderson contends that a comment by the prosecutor in final argument that Anderson's conviction on the burglary charge could result in a suspended sentence constituted reversible error. He argues that the prosecution and the court knew that he was ineligible for such a sen-

tence because of his prior convictions under the provisions of Ind.Code § 35–50–2–2, and that the court should have corrected the error. Anderson did not object to the comment, and does not argue, nor do we believe, that the error was fundamental. This issue was not preserved for review.

The conviction is affirmed.

### ON MOTION TO DISMISS
### STATE'S BRIEF

We note that the appellant has filed, pro se, a petition to dismiss the State's brief because it is "non-factual and false", bringing our attention to five pages in the transcript which he says bear out his claim. We are unable, because of the different pagination of the transcript as it appears as part of the full record, to examine this claim. We did notice, however, that the State's brief misstated the facts shown by the record in two instances. First, the State's brief recited that the evidence showed that Anderson entered the Tillman house by breaking down the kitchen door. The record shows that he entered by breaking the kitchen window. Second, the State's brief, in summarizing Joe Tillman's evidence, recited that Tillman said he heard Anderson say the remark about the television set and the dolls. Tillman did not directly identify which of the intruders said what. He did, however, ascribe the two remarks to the person who came upstairs. Tillman saw this man, who was Anderson.

Anderson has not shown in what way these minor departures from the record prejudiced him, and the State's brief is not dismissed.

GIVAN, C. J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.