Michael VAUGHAN, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 2–782A206.

Court of Appeals of Indiana,
Second District.

Feb. 28, 1983.

Brent Westerfeld, Public Defender, Lafayette, for appellant.

Linley E. Pearson, Atty. Gen., John D. Shuman, Deputy Atty. Gen., Indianapolis, for appellee.

SHIELDS, Judge.

Michael Vaughan (Vaughan) appeals his conviction of burglary under I.C. 35–43–2–1 (Burns Code Ed.Repl.1979) raising three issues:

1) Whether the trial court erred in refusing Vaughan's tendered instructions on the presumption of innocence;

2) Whether the trial court erred in refusing Vaughan's tendered instruction on voluntary intoxication;

3) Whether there was sufficient evidence to prove the element of intent to commit a felony.

I

In regard to the presumption of innocence, Vaughan's requested and refused instruction number one covered four matters: the existence of the presumption, its accompaniment of the defendant step by step throughout the trial, the jury's duty to view and weigh the evidence in light of the presumption, and the State's burden of proof.[1] Vaughan's requested and refused instruction number four covered the jury's duty to reconcile the evidence upon the theory of the defendant's innocence.[2] Vaughan con-

---

1. Vaughan's requested instruction number one was as follows:

"The law presumes the defendant is innocent of any crime. The defendant enters upon the trial with this presumption in his favor, and it goes with him throughout the trial, step by step, and it is your duty to weigh the evidence from the stand point of the defendant's innocence, if you can reasonably do so. The burden of proof throughout

is with the State of Indiana, not only when the trial begins, but throughout trial to its conclusion."

2. Vaughan's requested instruction number four was as follows:

"The guilt of the accused is not to be inferred merely because the facts proved are consistent with his guilt, but on the contrary, before there can be a verdict of guilty, you must believe from all the evidence and be-

tends the court's refusal of his requested instructions resulted in the jury not being fully instructed on the presumption of innocence, therefore denying him a fair trial.

■ In both preliminary *and* final instructions the court instructed the jury on the existence of the presumption of innocence, the jury's duty to view and weigh the evidence in light of the presumption, and the State's burden of proof.[3] A court does not err in refusing a tendered instruction if other instructions adequately state the law. *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70, 74; *Brandon v. State,* (1978) Ind., 268 Ind. 150, 374 N.E.2d 504, 507. Therefore, the question presented by Vaughan is whether it is reversible error to omit an *explicit* reference to the presumption remaining with the defendant throughout the trial, step by step.

■ Indiana has long required an instruction both on the presumption of innocence and the State's burden of proof. *E.g., Simmons v. State,* (1979) Ind.App., 385 N.E.2d 225; *Long v. State,* (1874) 46 Ind. 582. This requirement is despite the fact that the presumption of innocence and the State's burden of proof of guilt beyond a reasonable doubt are logically similar. However, a separate instruction on the presumption of innocence is deemed not merely preferable, but necessary, in our State because "it cautions the jury to put away

from their minds all the suspicion that arises from the arrest, the indictment, and the arraignment and to reach their conclusions solely from the legal evidence adduced." 9 J. Wigmore, *Evidence* § 2511 at 530 (Chadbourn rev. 1981) *quoted in Taylor v. Kentucky,* (1978) 436 U.S. 478, 486, 98 S.Ct. 1930, 1935, 56 L.Ed.2d 468, *quoted in Simmons v. State,* (1979) Ind.App., 385 N.E.2d 225, 226. Thus, Indiana has historically afforded the defendant more protection than is mandated by the Due Process Clause of the Fourteenth Amendment. *See Kentucky v. Whorton,* (1979) 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640.

■ Indiana has recently followed the lead of the U.S. Supreme Court in holding a defendant cannot claim denial of a fair trial solely because his tendered instruction on presumption of innocence was refused. *Kentucky v. Whorton,* (1979) 441 U.S. 786, 99 S.Ct. 2088, 60 L.Ed.2d 640 (explaining *Taylor v. Kentucky,* [1978] 436 U.S. 478, 98 S.Ct. 1930, 56 L.Ed.2d 468); *Bledsoe v. State,* (1980) Ind., 410 N.E.2d 1310. Rather, refusal to give the requested instruction must be evaluated "in light of the totality of the circumstances—including all the instructions to the jury, the arguments of counsel, whether the weight of the evidence was overwhelming, and other relevant factors...." *Kentucky v. Whorton,* 441 U.S. at 789, 99 S.Ct. at 2090 *quoted in Bledsoe v. State,* 410 N.E.2d at 1316.

---

yond a reasonable doubt that the facts proved are not consistent with his innocence. If two conclusions can reasonably be drawn from the evidence, one of innocence and one of guilt, you should adopt the conclusion of innocence."

**3.** The presumption of innocence instruction given was as follows:
"Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.
"The defendant is not required to present any evidence to prove his innocence or to prove or explain anything."
Record at 60, 105.
The instruction on weighing the evidence was, in pertinent part, as follows:
"You are the exclusive judges of the evidence, the credibility of the witnesses and of

the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his or her-ability and opportunity to observe; the memory, manner and conduct of the witness while testifying; any interest, bias or prejudice the witness may have; any relationship with other witnesses or interested parties; and the reasonableness of the testimony of the witness considered in the light of all of the evidence in the case.
"You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth...."
Record at 62, 109.
In addition, the jury was read an instruction explaining reasonable doubt as well as one instructing them to consider the instructions as a whole. Record at 61, 106; 63, 112.

However, because the jury was instructed on the presumption of innocence in *Bledsoe,* we do not regard Bledsoe's adoption of the totality of the circumstances test as retreating from our longstanding law requiring an instruction on the presumption. Rather, we view *Bledsoe* as applying the totality of the circumstances test to determine whether the particular instruction which was given, after the defendant's instruction was rejected, was sufficient to assure the defendant received a fair trial.

Vaughan bases his argument on the early case of *Farley v. State,* (1891) 127 Ind. 419, 26 N.E. 898, wherein the court held it reversible error when a general instruction was given

"to the effect that the defendant is presumed to be innocent until proven guilty beyond a reasonable doubt; but no instruction was given .... to the effect that the presumption of innocence prevails throughout the trial, and that it was the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence, if they could do so."

*Id.* at 420–21, 26 N.E. at 899.

However, as the State points out in its brief, the court in *Farley* held it error to instruct the jury on *neither* the perseverance of the presumption throughout the trial *nor* the jury's duty to reconcile the evidence on the theory of innocence of the accused if possible. Thus, the error in *Farley* was merely instructing on the existence of the presumption of innocence without providing the jury with any explanation of how the presumption works. *Farley* did not, as Vaughan contends, hold it is mandatory to explain the operation of the presumption of innocence by instructing that it follows the defendant throughout the trial step by step. *Contra Simmons v. State,* (1979) Ind.App., 385 N.E.2d 225.

Looking at the totality of the circumstances,[4] we hold the operation of the presumption of innocence was sufficiently cov-

ered in the court's instructions and Vaughan was not denied a fair trial. The jury was instructed in both preliminary and final instructions that

"Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the defendant guilty of each essential element of the crime charged, beyond a reasonable doubt.

"The defendant is not required to present any evidence to prove his innocence or to prove or explain anything."

Record at 60, 105.

The jurors were further instructed at both times that "You should attempt to fit the evidence to the presumption that the defendant is innocent and the theory that every witness is telling the truth...." Record at 62, 109.

We agree with the State that if one attempts to reconcile the evidence with the presumption of innocence, it is implicit that the presumption continues to apply. Further, the instructions directed the jury that the defendant did not have to do anything to prove his innocence. We find nothing in any of the separate instructions nor the instructions as a whole from which a juror might conclude anything other than the presumption of innocence remains with the defendant throughout the legal process.

On the contrary, the only time the presumption terminates, according to the instructions given, is when the State meets its burden of proof beyond a reasonable doubt on each element of the crime. In this regard, the first instruction given directed the jury to keep an open mind and admonished them not to "form or express an opinion during the trial" nor to reach a "conclusion in this case until you have heard all of the evidence, the arguments of counsel, and the final instructions as to the law which will be given to you by the court." Record at 54. Thus, they were instructed they were

---

4. Vaughan has alleged no circumstances at trial which might hint to the jury Vaughan's status as defendant tended to establish his guilt. *See Taylor v. Kentucky,* (1978) 436 U.S. 478, 98

S.Ct. 1930, 56 L.Ed.2d 468; *Bledsoe v. State,* (1980) Ind., 410 N.E.2d 1310. His contention of error concerns solely the failure to give his tendered instructions.

not to decide if the State had met its burden of proof until the completion of the trial.[5]

■ Examination of the total circumstances at trial fails to show Vaughan was deprived of the presumption of innocence as the presumption as well as its operation were explained to the jury through the court's instructions. Therefore we hold the court did not commit reversible error by refusing defendant's instruction number one which explained operation of the presumption by stating it goes with the defendant throughout the trial step by step.[6]

## II

Vaughan also contends the trial court erred in refusing his tendered instruction on the defense of voluntary intoxication.

We disagree. It is not error to refuse a tendered instruction if other instructions adequately state the law. *Gilmore v. State,* (1981) Ind., 415 N.E.2d 70, 74; *Brandon v. State,* (1978) Ind., 268 Ind. 150, 374 N.E.2d 504, 507.

The court instructed the jury

"The defense of intoxication is defined by law as follows: It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated.[7] Voluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase 'with the intent to'."

Vaughan objects to the court's instruction claiming it fails to explain how the voluntary intoxication defense is to be considered and fails to instruct the jury that the "with the intent to" element must be proven by the State beyond a reasonable doubt.

■ The court's instruction quotes from I.C. 35–41–3–5 (Burns Code Ed.Supp.1982) deleting the portions of the statute not pertinent to Vaughan's case.[8] Where the statutory language is not unconstitutionally

---

**5.** We are inclined to agree with Vaughan's argument in spirit, for we see merit in expressly explaining to the jury in plain language that the presumption of innocence stays with the defendant throughout the legal process until the verdict of guilty. Jurors are laymen. Just as it is necessary to explain to them both the State's burden of proof and the defendant's presumption of innocence although the two are the same concept, so also it is clearer to explain both their duty to reconcile the evidence with the presumption of innocence and the fact the presumption perseveres throughout the legal process, although the two ideas are interdependent.

We should note at this point that until the recent compilation of the Indiana Pattern Jury Instructions, the accepted instruction on the defendant's presumption of innocence contained language very much like the "step by step" language requested by Vaughan. However, that language was not carried forward into the pattern instruction, Indiana Judges Association, *Indiana Pattern Jury Instructions* (Criminal) No. 1.17 (1980), which was the instruction given by the trial court.

**6.** Instruction number four did not contain this particular language. Rather, it was repetitive of that part of instruction number one which was specifically covered by the trial court's preliminary and final instructions. *See* notes 1–4 *supra.*

**7.** The record shows that as drafted the court's instruction provided:

"The defense of intoxication is defined by law as follows:

"It is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated, if the intoxication resulted from the introduction of a substance into his body without his consent or when he did not know that the substance might cause intoxication.

"Voluntary intoxication is a defense only to the extent that it negates an element of an offense referred to by the phrase 'with the intent to.'"

Record at 78.

However, the reference to involuntary intoxication was deleted before the instruction was read to the jury. We note the deleted portion of the first sentence, "it is a defense that the person who engaged in the prohibited conduct did so while he was intoxicated," could be misleading if applied to voluntary intoxication. However, the second sentence adequately states the law as to voluntary intoxication, thus preventing any possible misapplication of the first sentence to voluntary intoxication. Moreover, if the jury were possibly misled by the first sentence of the court's instruction, any resulting misapplication of the voluntary intoxication defense would have been favorable rather than prejudicial to Vaughan.

**8.** As explained in note seven, references to involuntary intoxication were deleted, as was the reference to the phrase "with an intention to." *See* I.C. 35–41–3–5.

vague or misleading, it is generally acceptable to give instructions in the exact language of the statute. *See Taylor v. State,* (1981) Ind., 420 N.E.2d 1231, 1234; *Musick v. State,* (1972) 258 Ind. 295, 297, 280 N.E.2d 602, 603–04; *Zarnik v. State,* (1977) 172 Ind.App. 593, 604, 361 N.E.2d 202, 208. *See also Basham v. State,* (1981) Ind., 422 N.E.2d 1206, 1209–10.

◼ Vaughan has not challenged the language of the statute nor claimed it to be misleading. Indeed, although brief, we deem the language to paint a very clear picture of the defense of voluntary intoxication. According to the statute, the defense is available only to the extent it negates the element of the offense described by "with the intent to." In both preliminary and final instructions the jury was informed of the elements of burglary, one of them being "with the intent to" commit a felony.[9] The jurors were also fully instructed the State throughout the trial maintained the burden of proof beyond a reasonable doubt of each of the elements.[10] Where separate instructions adequately inform the jury as to the State's burden of proof, an instruction on the defense of voluntary intoxication is not fatally incomplete for lack of a reference to the proof required of the element of specific intent. *Clemons v. State,* (1981) Ind., 424 N.E.2d 113, 117–18.

### III

◼ Vaughan's final assertion of error is there was insufficient evidence to establish the element of his intent to commit a felony.[11] The appellate standard of review of sufficiency of the evidence in criminal cases is well established. This court will not reweigh the evidence nor judge the credibility of the witnesses, but will consider only the evidence most favorable to the State and all reasonable inferences which may be drawn therefrom. If we find substantial evidence of probative value from which a reasonable trier of fact could conclude guilt beyond a reasonable doubt, then we must affirm. *Bray v. State,* (1982) Ind., 430 N.E.2d 1162. The trier of fact may draw reasonable inferences from facts established either by direct or circumstantial evidence, and a guilty verdict may be based solely on circumstantial evidence. *Turpin v. State,* (1982) Ind., 435 N.E.2d 1, 4; *Rowan v. State,* (1982) Ind., 431 N.E.2d 805, 811.

◼ It has also been clearly held that, unlike a trial court, a reviewing court does not have to find circumstantial evidence adequate to overcome every reasonable hypothesis of innocence but need only find that an inference which supports the findings of the jury may reasonably be drawn therefrom. *Turpin,* 435 N.E.2d at 4; *Rowan,* 431 N.E.2d at 811; *Spears v. State,* (1980) Ind., 401 N.E.2d 331, 334–35, *modified on other grounds,* Ind., 403 N.E.2d 828.

9. Court's instruction number five stated:
 "The crime of burglary is defined by statute as follows:
 "A person who breaks and enters the building or structure of another person, with intent to commit a felony in it, commits burglary, a Class C felony.
 "To convict the defendant the State must have proved each of the following elements:
 The defendant
 1. broke and entered
 2. the building or structure of another
 3. with the intent to commit a felony in it.
 "If the State failed to prove each of these elements beyond a reasonable doubt, you should find the defendant not guilty.
 "If the State did prove each of these elements beyond a reasonable doubt, you should find the defendant guilty of burglary, a Class C felony."
 Record at 58, 103.

10. Court's instruction number eight explained the concept of reasonable doubt and numbers five, six, and seven instructed on the State's burden of proof beyond a reasonable doubt. Record at 74, 106; 71, 103; 72, 104; 73, 105.

11. The information did not specify the felony with which Vaughan was charged to have the intent to commit. Therefore, the information was defective. *Reed v. State,* (1982) Ind., 438 N.E.2d 704; *Bays v. State,* (1959) 240 Ind. 37, 159 N.E.2d 393. However, Vaughan has waived this error by his failure to timely challenge the sufficiency of the information. I.C. 35–3.1–1–4(a) (Burns Code Ed. Repl.1979) (current version at I.C. 35–34–1–4(a) (Burns Code Ed. Supp.1982)). Moreover, the record demonstrates both Vaughan and the State tried the case on the assumption theft was the underlying felony.

Viewed most favorably to the State, the record shows that at dusk, 7:57 p.m. on April 5, 1981, Vaughan threw a rock through the glass door of Arth's Drugs in Lafayette, Indiana triggering the silent alarm. An eyewitness testified Vaughan watched every car that went by and tried unsuccessfully a moment before to break the door with a rock. The police, who arrived one minute after Vaughan triggered the alarm, found him in the back of the store between two drug counters in the pharmacy. Upon being directed to "freeze" Vaughan ran into the store office and acted as though he were pouring himself a cup of coffee. The pot contained only water. Vaughan struggled with the police and became verbally abusive when apprehended. None of the store's items were found in Vaughan's possession and the record shows no evidence any merchandise had been disturbed.

 We agree with Vaughan that mere breaking and entering does not constitute evidence of intent to commit a felony. However, the intent to commit a felony element of burglary can be inferred from the time, force and manner of entry if there is no evidence the entry was made with lawful intent. Circumstantial evidence that goes beyond the mere fact of breaking and entering may support the intent element. *Anderson v. State,* (1981) Ind., 426 N.E.2d 674; *Carter v. State,* (1976) Ind., 265 Ind. 535, 356 N.E.2d 220; *Lisenko v. State,* (1976) Ind., 265 Ind. 488, 355 N.E.2d 841; *Keirns v. State,* (1980) Ind.App., 403 N.E.2d 361; *Davis v. State,* (1980) Ind.App., 398 N.E.2d 704; *Perdue v. State,* (1979) Ind. App., 398 N.E.2d 1290.

 Here, Vaughan, who was not an employee, shattered a locked store door with a rock at dusk, crawled into the store, and was found by the police minutes later in the pharmacy area. Vaughan challenges the reasonableness of permitting an inference of felonious intent from evidence of the time, force and manner of entry, claiming it places the burden of disproving intent to him, thus violating his due process. He further argues a reasonable fact finder could infer a non-felonious intent, such as intent to trespass or commit criminal mischief, from the circumstances surrounding his breaking and entering Arth's Drugs. We do not agree.

Implicit within Vaughan's contention is the argument that it does not logically follow that one who surreptitiously breaks and enters a store therefore intends to commit theft, or some other felony, while inside. What Vaughan fails to perceive is that law is not always syllogistically pure but is instead based upon human experience. *See Keirns,* 403 N.E.2d at 362; *Castaneda v. State,* (1978) Ind.App., 175 Ind.App. 519, 372 N.E.2d 1191, 1193 (Sullivan, J., dissenting). Were it not so, in the words of Justice Arterburn, the law would penalize

"efficient methods of law enforcement, such as alarm systems. Police officers promptly alerted, [would have to] wait until the intruder has first seized the property or committed a rape or some other felony before the intruder may be convicted of a felony. A home owner who finds an intruder in his home at night will be surprised to hear that such a law-breaker cannot be convicted of a felony until he has first seized property or raped somebody, even though he can give no logical explanation of why he is there and even though he may be hiding or attempting to flee."

*Lisenko,* 355 N.E.2d at 843 (quoting *Crawford v. State,* (1968) 251 Ind. 437, 446, 241 N.E.2d 795, 800 (Arterburn, J. dissenting)).

However, here, we need not determine whether the evidence of the time, force and manner of Vaughan's entry is alone sufficient to support the inference he intended to commit a felony in the store although our Supreme Court has held it is reasonable for a jury to infer felonious intent from the time, force, and manner of entry if there is no evidence of lawful intent. *Lisenko,* 355 N.E.2d 841. Other circumstances surrounding the breaking and entering may also support the inference of felonious intent even though no property was actually taken or disturbed. *E.g., Carter,* 265 Ind. 535, 356 N.E.2d 220 (armed); *Lisenko,* 265 Ind. 488,

355 N.E.2d 841 (defendants said they gave up); *Keirns,* 403 N.E.2d 361 (observing home from car; fleeing).

The record shows that, when confronted, Vaughan attempted to act as though his presence were authorized by pouring himself a cup of coffee. Additionally, although he was apprehended in the store and was unable to flee, he struggled with the officers, was combative, and verbally abusive. Therefore, we find the evidence sufficient to permit a jury to reasonably infer Vaughan broke and entered the store with the intent to commit a felony.

Judgment affirmed.

BUCHANAN, C.J., concurs.

SULLIVAN, J., dissents, with separate opinion.

SULLIVAN, Judge, dissenting.

I would reverse the conviction.

I do not quarrel with the logic of the rationale underlying the holding of Part I. I agree with the majority that

"if one attempts to reconcile the evidence with the presumption of innocence, it is implicit that the presumption continues to apply." Slip opinion at 8.

Such logic, however, does not permit us to affirm the conviction in the light of binding precedent. Contrary to the interpretation placed by the majority upon *Farley v. State* (1891) 127 Ind. 419, 26 N.E. 898, I read that case to require that the jury be specifically told that the presumption of innocence remains with the defendant throughout the trial. It is not sufficient that the jury be instructed generally upon the presumption of innocence, and that the evidence should be reconciled if possible consistent with the defendant's innocence and that guilt must be determined beyond a reasonable doubt by all the evidence. In *Farley,* the jury was instructed that the presumption of innocence exists until a determination of guilt beyond a reasonable doubt was made. Clearly, one cannot determine guilt beyond a reasonable doubt until the evidence has been concluded, but the majority would say that implicit in the instruction given in

*Farley* is the principle that the presumption necessarily follows to and including the time when the evidence is weighed and the guilt determination is made. Yet *Farley* held otherwise requiring an instruction stating not only that it was the duty of the jury to reconcile the evidence with the hypothesis of innocence, but as well that the presumption prevails throughout the trial.

*Ridge v. State* (1923) 192 Ind. 639, 137 N.E. 758 convinces me of such requirement. *Ridge* presents the converse of the situation before us. In *Ridge,* instructions were given which stated the presumption of innocence, and that it remains throughout the trial, and until guilt was proved beyond a reasonable doubt. This was held inadequate and that the jury must be instructed that they must reconcile the evidence upon the theory that the defendant is innocent. The conviction in *Ridge* was therefore reversed. If we are to follow binding precedent as set forth in *Farley* and *Ridge,* the same result is dictated in the case before us no matter how unduly technical it may appear.