## LONG *v*. THE STATE.

GRAND JURY.—When the record does not show the contrary, it will be presumed that the grand jury was regularly drawn, summoned, and empanelled.

SAME.—*Reconvening of.*—Where the grand jury has been dismissed before the final adjournment of the court, it may, if necessary, be resummoned to attend again at the same term.

PRACTICE.—*Motion.*—*Affidavit.*—Affidavits in support of a motion for a continuance are not a part of the record, unless made so by a bill of exceptions.

SAME.—*Discharge of Jury.*—*Waiver.*—The discharge of a jury in a criminal

case must be excepted to at the time by the defendant, or he will be deemed to have waived any objection thereto.

ASSAULT AND BATTERY WITH INTENT TO COMMIT MURDER.—*Definition.*—In charging the jury in a prosecution for assault and battery with intent to commit murder, it was error to define the words " purposely and maliciously," used in the indictment, as being equivalent to the words " knowingly and wilfully," and to charge the jury that if the assault and battery was knowingly and wilfully done with intent to kill, this was sufficient to sustain the higher charge included in the indictment.

CRIMINAL LAW.—*Presumption of Innocence.*—The defendant in a criminal prosecution is presumed to be innocent until the contrary is shown, and it is error to refuse to so instruct the jury.

From the Elkhart Circuit Court.

*W. A. Woods* and *W. C. Wilson*, for appellant.

*J. C. Denny*, Attorney General, and *W. C. Glasgow*, Prosecuting Attorney, for the State.

OSBORN, J.—The appellant was indicted in the Elkhart Circuit Court at its April term, 1873, for an assault and battery with intent to commit murder. He moved to quash the indictment, which motion was overruled. He then pleaded not guilty, and the issue was tried by a jury, who found him guilty, and that he should be fined and imprisoned in the state prison. Motions for a new trial and in arrest of judgment were made and overruled, and judgment rendered upon the verdict. Proper exceptions were taken to the several rulings of the court, and the errors assigned present for our consideration the correctness of such rulings.

It is claimed that the motions to quash and in arrest of judgment should have been sustained, because the indictment was not returned by a lawful grand jury.

Prior to the act of March 6th, 1873 (Acts 1873, p. 87), the Elkhart Circuit Court commenced on the third Monday of March of each year. By that act the time of holding the court was changed to the fourth Monday of April. A statement of the clerk, preceding the entry of the usual order impanelling the grand jury, states that a grand jury was drawn by the county commissioners on the 3d day of March, 1873, that being the first day of the March term

·of the board, for the March term of the Elkhart Circuit Court, and a list of the names so drawn is given. The order impanelling the grand jury shows that the *venire* for the grand jury returned by the sheriff included the same names composing the list drawn by the board of commissioners. Some of them failed to appear, and their places were supplied by the sheriff, under the direction of the court. The grand jury so summoned was impanelled and sworn and afterward dismissed. During the term, the court found it necessary that they should be summoned to attend again at that term and ordered that they should be so summoned. A *venire* was issued to and served by the sheriff, and the same grand jury again impanelled and sworn, who afterward returned the indictment in this case.

The record does not show that the grand jury was not regularly and legally summoned and impanelled. *Bell* v. *The State*, 42 Ind. 335. It was said in that case that we would presume that the grand jury had been summoned in pursuance of an order of the judge, or that they had been summoned prior to the approval of the act of March 10th, 1873, Acts 1873, p. 158. We will also presume that they were regularly and legally impanelled after they had been sworn and acted, as in this case, unless there is something in the record showing that they were not. *Bailey* v. *The State*, 39 Ind. 438–49; *Lovell* v. *The State*, 45 Ind. 550.

In this case, there is nothing showing that the *venire* had not been issued to and served by the sheriff prior to March 6th, 1873, the date of the approval of the act changing the time of holding the court, and we will not presume that it had not. Sec. 84 of that act made such *venire* returnable to the first day of the court, as fixed and provided for by the act.

Sec. 15, 2 G. & H. 394, provides, that whenever the grand jury is dismissed before the final adjournment, they may be summoned to attend again at the· same term, if necessary. It was under that section that the grand jury was called the second time, and not under section 2 of the act of March

10th, 1873. The order which the last mentioned section authorizes the judge to make is not to summon a dismissed grand jury to attend again at the same term, but to call them together for the first time. The *venire* must be for the jury drawn and selected for the term to which it is returnable. The grand jury, as finally impanelled, may be, and usually is, composed of some who were not so drawn and selected. When impanelled and sworn, they became the grand jury for the term. It is the dismissed jury that is to be summoned again under section 15, *supra*, although it may include persons not drawn and selected for the term.

We do not think it necessary to consider whether a challenge to the array could have been supported or a plea in abatement taken. But see sections 11 and 12, 2 G. & H. 433; *Hardin* v. *The State*, 22 Ind. 347. In that case, after quoting those sections, it is said, p. 350: "Under the provisions of the section last above quoted, where a grand jury has been duly charged and sworn, as was done in the present case, it is not material in what manner they may have been selected to serve as such, unless the irregularity of their selection amounts to corruption." Sec. 876 to 881, and notes, 1 Bishop Crim. Proced. 9; 1 Wharton Crim. Law, sec. 472; *The State* v. *Brooks*, 9 Ala. 9; *The People* v. *Allen*, 43 N. Y. 28; *Friery* v. *The People*, 2 Keyes N. Y. 424; *The People* v. *Jewett*, 6 Wend. 386.

The appellant urges as another ground for arresting the judgment, that the record shows that he had been once in jeopardy before for the same offence.

The record shows that after the appellant had been arraigned and pleaded not guilty, a jury was impanelled and sworn to try the cause, and that it was then continued on the application of the appellant. He now urges that his application was not for a continuance for the term, but for a postponement. The affidavits upon which the motion was founded are copied into the record, but as they are not in any bill of exceptions they are not before us, and we cannot notice their contents. The record states, that he moved for a continu-

ance, and that his motion was granted and the cause continued until the next term of the court. The jury were necessarily discharged. He failed to except or object. At the next term of the court, another jury was impanelled without objection, who returned a verdict of guilty, upon which verdict judgment was rendered against him, the court having overruled a motion in arrest. From that judgment this appeal is taken.

The failure of the appellant to object and except to the continuance for the term and to the discharge of the jury, was a waiver of any objection to such action of the court, and will be deemed to have been done with his consent. *Kingen* v. *The State, ante*, p. 132.

The court committed no error in overruling the motions to quash and in arrest of judgment.

One of the reasons for a new trial was error of the court in giving and refusing to give instructions to the jury.

The assault and battery charged in the indictment was, that the appellant maliciously and purposely shot one Hawkins, with the intent to kill and murder him. The court, in its charge, after defining the offence, instructed the jury, that it would be unnecessary for them to consider whether the shooting was done with the premeditated malice or not, "but it must have been done purposely and maliciously; that is, knowingly and wilfully done with intent and design to kill Hawkins, in order to sustain the higher charge included in the indictment." This was wrong. The jury were told that the words "knowingly and wilfully" are the equivalents of "purposely and maliciously;" that if the appellant shot Hawkins knowingly and wilfully, with the intent and design to kill him, he was not only guilty of an assault and battery, but of the higher charge of an intent to murder. It excludes the idea that one may knowingly and wilfully kill another in self defence, and be guilty of no offence. Now, it is of the very essence of the crime of murder, that the homicide shall be committed maliciously; and it is erroneous to instruct the jury, that if the killing is

knowingly and wilfully done, it is murder. Whether proof of the homicide is presumptive evidence of murder, is a question not involved in the instruction under consideration, and about which judges and authors differ, and concerning which we express no opinion.

In *Dennison* v. *The State*, 13 Ind. 510, which was a prosecution for an assault and battery with intent to commit murder, the jury were instructed that if there was evidence of express malice, "that is, a positive intention to kill, existing in the mind of the slayer, at the time of inflicting the wound," the killing would be murder in the second degree. The court say: "This instruction contains an error, which may have misled the jury. It informs them that intention to kill, existing at the commission of the act, constitutes express malice. This is entirely wrong.

"In justifiable homicide, there is" (may be) "intention to kill, but not necessarily malice or premeditation."

At the proper time, the appellant asked the court to instruct the jury as follows:

"The defendant is presumed to be innocent until the contrary is shown, and where there is a reasonable doubt whether his guilt is satisfactorily shown, he must be acquitted;" which was refused, on the ground that the same had been substantially given in the instructions of the court.

We have carefully examined all the instructions, and find that the second branch of that asked and refused had been substantially given, but they were silent as to the presumption of innocence. The court should have charged the jury on that subject as asked, and an error was committed by its refusal to do so.

The judgment of the said Elkhart Circuit Court is reversed; and the cause is remanded, with instructions to that court to grant a new trial, and for further proceedings. The clerk is instructed to make the proper certificate to the warden of the state prison.