**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**R. PATRICK MAGRATH**
Alcorn Goering & Sage, LLP
Madison, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JAKE E. ESTES, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 39A01-1205-CR-214 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE JEFFERSON SUPERIOR COURT
The Honorable Alison T. Frazier, Judge
Cause No.  39D01-1107-FD-584

**April 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

Jake E. Estes appeals his convictions for dealing in marijuana as a class D felony and possession of marijuana as a class D felony. Estes raises three issues, which we revise and restate as:

I. Whether the evidence was sufficient to support his convictions;

II. Whether the trial court abused its discretion in instructing the jury; and

III. Whether his sentence is inappropriate in light of the nature of the offense and the character of the offender.

We affirm in part, reverse in part, and remand.

FACTS

In May of 2011, U.S. Postal Service Inspector Thomas Henderson received information that someone living at Estes's address, 106 Sycamore Drive in Hanover, Indiana, had been receiving suspicious express parcels from California. Henderson placed a "parcel watch" for the address and instructed the manager of the local post office to advise him when the next parcel arrived for that particular address. Transcript at 27.

In June of 2011, Henderson intercepted a package addressed to "Mr. G Butters" at 331 W. Lagrange Road in Hanover, with a return address of "Brian Sherman" from Soquel, California. State's Exhibit 8. The return label did not match any known address in California. Pursuant to a federal warrant, Henderson opened the parcel and discovered approximately five pounds of "high grade" marijuana packaged in five "loaves." Transcript at 29, 63.

Henderson then arranged a controlled delivery of the intercepted package. The box was resealed with a transmitter inside. Henderson, posing as a postal carrier, delivered the

2

package to the residence of Sandy Butters, who had previously acceded to Estes's request that she accept a package for him. Butters answered the door, acknowledged the package, signed for it, and took it inside. Henderson retreated, but remained nearby, leaving police officers to conduct surveillance of the residence.

Thereafter, Estes arrived at Butters's residence, and within seconds the transmitter indicated movement of the package. Approximately a minute after arrival, Estes exited the residence holding the package. He placed it in his vehicle and drove away. A short distance from Butters's residence, police officers stopped Estes. From inside the vehicle, police recovered the box of marijuana. Estes's wallet and pants found in the vehicle's trunk contained cash amounting to $1,681. Police also found an express mail label from a day or two earlier, addressed from "J. Long" at 331 W. LaGrange Road in Hanover to "Michael Ericson, 1768 Del Mar Ct, Santa Cruz 95062." Id. at 64; State's Exhibit 22. The package corresponding to that label was intercepted and found to contain $9,910.00 in cash. Estes's cellular phone held a contact number for "Michael Ericson." State's Exhibit 49.

PROCEDURAL HISTORY

On July 5, 2011, the State charged Estes with Count I, dealing in marijuana as a class D felony; Count II, possession of marijuana as a class D felony; Count III, possession of marijuana as a class D felony; and Count IV, maintaining a common nuisance as a class D felony. That same day, the State also filed a separate information charging Estes with being an habitual substance offender. On March 19, 2012, the State filed a motion to dismiss Counts III and IV and a motion to amend certain language in Count I, both of which the court granted that same day. On March 21, 2012, a jury trial was held, and on March 23, 2012, the

3

jury found Estes guilty on Counts I and II. The court dismissed the habitual substance offender charge based upon a motion by the State, which indicated that Estes did not qualify under the statute. On April 16, 2012, the court sentenced Estes to three years on each of his convictions and ordered that the sentences be served concurrently. Thus, Estes was sentenced to an aggregate term of three years in the Department of Correction.[1]

ISSUES

I.

For reasons which will become apparent below, we first address whether the evidence was sufficient to support Estes's convictions. When reviewing the sufficiency of the evidence needed to support a criminal conviction, we neither reweigh evidence nor judge witness credibility. Bailey v. State, 907 N.E.2d 1003, 1005 (Ind. 2009). "We consider only the evidence supporting the judgment and any reasonable inferences that can be drawn from such evidence." Id. We will affirm if there is substantial evidence of probative value such that a reasonable trier of fact could have concluded the defendant was guilty beyond a reasonable doubt. Id.

The offense of possession of marijuana is governed by Ind. Code § 35-48-4-11, which at the time of Estes's offense provided in relevant part that "[a] person who . . . knowingly or intentionally possesses (pure or adulterated) marijuana . . . commits possession of marijuana .

---

[1] In the same sentencing order, Estes was sentenced on an unrelated matter to six months in the Jefferson County Jail for disorderly conduct as a class B misdemeanor and noted that his time had already been served. The court noted that "[t]he nature and circumstances surrounding this offense . . . indicate that two other inmates were involved in an altercation, and seven (7) other inmates joined in, including the defendant, and ganged up on one inmate" and that "[t]he inmate who was battered may be mentally infirm and the decision to join in at that time is one that the Court believes comes from a criminal mind." Appellant's Appendix at 255.

4

. . . However, the offense is a Class D felony [] if the amount involved is more than thirty (30) grams of marijuana . . . ." The offense of dealing in marijuana is governed by Ind. Code § 35-48-4-10, which at the time of Estes's offense provided in relevant part that "[a] person who . . . knowingly or intentionally . . . possesses, with intent to . . . deliver . . . marijuana . . . pure or adulterated[] commits dealing in marijuana . . . . The offense is . . . a Class D felony if . . . the amount involved is more than thirty (30) grams but less than ten (10) pounds of marijuana . . . ." The element of intent can be inferred from examining the surrounding circumstances and reasonable inferences to be drawn therefrom. Turner v. State, 878 N.E.2d 286, 295 (Ind. Ct. App. 2007), trans. denied. "Evidence of the illegal possession of a relatively large quantity of drugs is sufficient to sustain a conviction for possession with intent to deliver." Id.

Estes argues that the State presented insufficient evidence to support his convictions, arguing that "the only thing connecting Estes to the box was his proximity." Appellant's Brief at 14. More particularly, he denies that the State proved his knowledge that the box contained contraband.

A conviction for possession of contraband may rest upon either actual possession or constructive possession. Goodner v. State, 685 N.E.2d 1058, 1061 (Ind. 1997). Actual possession of contraband occurs when a person has direct physical control over the item. Gee v. State, 810 N.E.2d 338, 340 (Ind. 2004). In this case, Estes was observed personally and exclusively carrying the box which held the transmitter and marijuana. He was in actual possession of the box, but denies knowing it contained contraband. Knowledge is a mental state, and thus the jury must resort to reasonable inferences as to its existence. Young v.

State, 761 N.E.2d 387, 389 (Ind. 2002).

The evidence most favorable to Estes's convictions reveals that Estes asked Butters to accept a package on his behalf. Immediately upon arriving at Butters's residence, Estes took the package and left with it. Estes was found in possession of a large quantity of marijuana, in loaves. A law enforcement officer testified that the amount greatly exceeded that typical of personal use. Postal clerk Jodi Wells testified that Estes had been routinely sending similar-sized packages to California. He had used names other than his own when preparing the labels for those packages. One recent label was found in the vehicle Estes was driving. Over $9,000 had been shipped to a "Michael Ericson," and the contact information for "Michael Ericson" was found in Estes's phone. According to post office records, three packages from California were delivered to Estes's address, 106 South Sycamore Street, Hanover, in the month of June. Each package weighed between six and seven pounds. Two of the three had fictitious return addresses.

We therefore conclude that evidence of probative value exists from which the jury could have found Estes guilty beyond a reasonable doubt of dealing in marijuana and possession of marijuana as class D felonies. However, although neither party raises the issue, we must address, *sua sponte*, the issue of whether Estes's conviction for possession of marijuana is barred by double jeopardy principles. See Smith v. State, 881 N.E.2d 1040, 1047 (Ind. Ct. App. 2008) ("We raise the issue sua sponte because a double jeopardy violation, if shown, implicates fundamental rights."). The Indiana Constitution states that "[n]o person shall be put in jeopardy twice for the same offense." IND. CONST. art 1, § 14. "[T]wo convictions may be the 'same offense' in violation of this Indiana Double Jeopardy

6

Clause if, with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." McIntire v. State, 717 N.E.2d 96, 99 (Ind. 1999).

Here, the jury found Estes guilty of dealing in marijuana and possession of marijuana, the court entered a judgment of conviction as to both, and sentenced him for each count. The charging information for Count I as amended stated that Estes "knowingly or intentionally possessed, with intent to deliver, MARIJUANA (pure or adulterated) in an amount over thirty (30) grams." Appellant's Appendix at 171. The State charged that Estes under Count II that he "knowingly or intentionally possessed MARIJUANA (pure or adulterated) in an amount over thirty (30) grams." Id. Thus, to prove that Estes was dealing in marijuana, it was necessary for the State to prove that he was in possession of marijuana.

An offense is a lesser included offense if the included offense "is established by proof of the same material elements or less than all the material elements required to establish the commission of the offense charged." Ind. Code § 35-41-1-16. Indiana law recognizes that "the inherently included offense . . . is necessarily committed in the course of committing the greater offense." Rouse v. State, 525 N.E.2d 1278, 1280 (Ind. Ct. App. 1988) (quoting Maynard v. State, 490 N.E.2d 762, 763 (Ind. 1986)), trans. denied. Here, under the circumstances in which the dealing and possession charges and convictions were based upon the same marijuana, Estes would have to commit the lesser offense of possession to commit the greater offense of dealing. It is a violation of double jeopardy to sentence Estes for the greater offense as well as the lesser-included offense. Thus, we remand with instructions that

7

the court vacate Estes's conviction on Count II, possession of marijuana as a class D felony.[2]

## II.

The next issue is whether the trial court abused its discretion in instructing the jury. Generally, "[t]he purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." Overstreet v. State, 783 N.E.2d 1140, 1163 (Ind. 2003), cert. denied, 540 U.S. 1150, 124 S. Ct. 1145 (2004). Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion. Id. at 1163-1164. When reviewing the refusal to give a proposed instruction, this court considers: (1) whether the proposed instruction correctly states the law; (2) whether the evidence supports giving the instruction; and (3) whether other instructions already given cover the substance of the proposed instruction. Driver v. State, 760 N.E.2d 611, 612 (Ind. 2002). To constitute an abuse of discretion, the instruction given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury. Benefiel v. State, 716 N.E.2d 906, 914 (Ind. 1999), reh'g denied, cert. denied, 531 U.S. 830, 121 S. Ct. 83 (2000).

Before a defendant is entitled to a reversal, he or she must affirmatively show that the erroneous instruction prejudiced his substantial rights. Lee v. State, 964 N.E.2d 859, 862 (Ind. Ct. App. 2012) (citing Gantt v. State, 825 N.E.2d 874, 877 (Ind. Ct. App. 2005)), trans. denied. An error is to be disregarded as harmless unless it affects the substantial rights of a party. Id. (citing Oatts v. State, 899 N.E.2d 714, 727 (Ind. Ct. App. 2009); Ind. Trial Rule

---

[2] We observe that because the court ordered that Estes serve his sentences concurrently, our order vacating Count II does not affect his aggregate, three-year term in the Department of Correction.

8

61). "Errors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." Id. at 862-863 (quoting Dill v. State, 741 N.E.2d 1230, 1233 (Ind. 2001)).

At the close of the evidence, Estes tendered the following two instructions:

> Under the law of this state, a person charged with a crime is presumed to be innocent. This presumption continues in favor of the accused thruout [sic] the trial of this cause. To overcome the presumption of innocence, the State must prove the Accused guilty of each essential element of the crime charged, beyond a reasonable doubt.
>
> The Accused is not required to present any evidence to prove his innocence or to prove or explain anything.
>
> You should attempt to fit the evidence to the presumption that the Accused is innocent.
>
> If the evidence in this case is susceptible of two (2) constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the innocence of the Accused, and the other to his guilt, it is your duty under the law to adopt the interpretation which is consistent with the Accused's innocence, and reject that which points to his guilt.

Appellant's Appendix at 201. The other instruction stated:

> Evidence which merely tends to establish a suspicion of guilt, or evidence which tends to establish a mere opportunity to commit the offense charged, is clearly insufficient to sustain a conviction. A verdict based merely on suspicion, opportunity, probability, conjecture, speculation, and unreasonable inference of guilt gleaned from vague circumstances or evidence is not sufficient to find the accused guilty.

Id. at 204.

The trial court rejected Estes's proffered instructions, opining that their substance was covered by pattern instructions, as follows:

**Final Instruction 5**

9

Under the law of this State, a person charged with a crime is presumed to be innocent. To overcome the presumption of innocence, the State must prove the Defendant guilty of each element of the crime charged, beyond a reasonable doubt.

The Defendant is not required to present any evidence to prove his innocence or to prove or explain anything.

## Final Instruction 6

The burden is upon the State to prove beyond a reasonable doubt that the Defendant is guilty of the crimes charged. It is a strict and heavy burden. The evidence must overcome any reasonable doubt concerning the Defendant's guilt. But it does not mean that a Defendant's guilt must be proved beyond all possible doubt.

A reasonable doubt is a fair, actual and logical doubt based upon reason and common sense. A reasonable doubt may arise either from the evidence or from a lack of evidence. Reasonable doubt exists when you are not firmly convinced of the Defendant's guilt, after you have weighed and considered all the evidence.

A Defendant must not be convicted on suspicion or speculation. It is not enough for the State to show that the Defendant is probably guilty. On the other hand, there are very few things in this world that we know with absolute certainty. The State does not have to overcome every possible doubt.

The State must prove each element of the crimes by evidence that firmly convinces each of you and leaves no reasonable doubt. The proof must be so convincing that you can rely and act upon it in this matter of the highest importance.

If you find that there is a reasonable doubt that the Defendant is guilty of the crimes, you must give the Defendant the benefit of that doubt and find the Defendant not guilty of the crime under consideration.

Id. at 233-234.

In addition, the trial court gave the following instruction:

## Final Instruction 7

10

Direct evidence means evidence that directly proves a fact, and that, if true, conclusively establishes that fact.

Circumstantial evidence means evidence that proves a fact from which you may conclude the existence of another fact.

It is not necessary that facts be proved by direct evidence. Both direct evidence and circumstantial evidence are acceptable as a means of proof. A conviction may be based solely on circumstantial evidence. Where proof of guilt is by circumstantial evidence only, it must be so conclusive and point so convincingly to the guilt of the accused that the evidence excludes every reasonable theory of innocence.

Id. at 235.

Estes argues that the jury was not adequately instructed on the presumption of innocence and the duty to reconcile evidence according to the theory of innocence if possible. Estes argues that he was entitled to have the jury instructed in a more explicit manner upon the presumption of innocence and their evaluation of conflicting evidence. In particular, Estes asserts that the jury was not advised to attempt to fit the facts into a presumption of innocence or to favor his explanation in deciding between two reasonable explanations of the evidence, nor was the jury expressly instructed that the presumption of innocence continues throughout the trial.

The State argues that "the court's instructions adequately conveyed to the jury the high burden the State had to prove [Estes] guilty," noting that Final Instruction 5 "explained that [Estes] was presumed to be innocent and that the State bore the burden of proving him guilty beyond a reasonable doubt." Appellee's Brief at 9. The State argues that "[t]he concept of the language . . . telling the jury to attempt to fit the evidence to the presumption of [Estes's] innocence is also covered in the instructions given by the court, albeit in different language"

11

and points to Final Instruction 7 which "states that when evidence is by circumstantial evidence only, which it was here, then the evidence must be so conclusive and point so convincingly to [Estes's] guilt 'that the evidence excludes every reasonable theory of innocence.'" Id.

The State also acknowledges in its brief that this court has recently found reversible error where the trial court rejected a defendant's proffered jury instruction containing the admonition that the jury is to attempt to fit the evidence to the presumption that the accused is innocent. In Lee v. State, the trial court rejected the defendant's proffered instruction which was nearly identical to the first of Estes's two tendered instructions he requested, and it instead instructed the jury that Lee was presumed innocent, that the jury should keep an "open mind," that the State had the burden of proof, that if there was reasonable doubt, Lee should be given the benefit of that doubt, and that in the face of conflicting evidence, the jury might have to decide what testimony to believe and what testimony to disbelieve. 964 N.E.2d at 864. On appeal, this court recognized that the Indiana Supreme Court has previously held where a defendant requests an instruction "which advises the jury that the presumption of innocence prevails until the close of the trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence if they could do so, must be given if requested." Id. (quoting Robey v. State, 454 N.E.2d 1221, 1222 (Ind. 1983) (citing Farley v. State, 127 Ind. 419, 26 N.E. 898 (1891); Simmons v. State, 179 Ind. App. 342, 385 N.E.2d 225 (1979))).

The Lee court held that the challenged jury instructions were inadequate to address the presumption of innocence and observed that the balance of the instructions given by the court

12

and cited by the State as adequate were "in the context of reasonable doubt." Id. at 865. In

so holding, the court specifically observed:

> To the extent that the jury was instructed that it had to find each element beyond a reasonable doubt and that it was up to each juror to decide whom to believe regarding conflicting testimony, we find that such instructions do not satisfy Robey's dictate that a jury be specifically instructed, if requested by a defendant, "that the jury should fit the evidence to the presumption that a defendant is innocent . . . ." Simpson v. State, 915 N.E.2d 511, 520 (Ind. Ct. App. 2009), trans. denied.

Id.

Here, the final instructions given by the trial court suffered from the same deficiencies

as in Lee. In particular, although the court instructed the jury in Final Instruction 6 that "if

you find conflicting testimony, you must determine which of the witnesses you will believe

and which of them you will disbelieve," and that "[y]ou should give the greatest value to the

evidence you find most convincing," such instructions do not adequately satisfy the Court's

holding in Robey that, if requested, a jury must be instructed that presumption of innocence

prevails until the close of the trial and that, accordingly, the jury should fit the evidence to the

presumption that a defendant is innocent if possible.

To the extent that the State argues that there is no fatal infirmity in the instructions

given here because the jury was additionally instructed that proof by circumstantial evidence

must be so conclusive that it excludes every reasonable theory of innocence, we disagree. As

noted above, this instruction specifically stated that the jury was instructed that the evidence

must exclude every reasonable theory of innocence *where proof of guilt is by circumstantial*

*evidence only*. This is not equivalent to instructing the jury that the defendant's presumption

of innocence prevails throughout trial. Nor is it equivalent to instructing the jury that it is its duty to reconcile the evidence on the theory of the defendant's innocence if it can do so.

Indeed, we note that recently, in <u>Hampton v. State</u>, the Indiana Supreme Court recognized that this "every-reasonable-theory-of-innocence" instruction is deeply embedded in Indiana jurisprudence and determined that it is required in cases where a trial court determines that the State's only proof of the actus reus of a charged crime is circumstantial evidence. 961 N.E.2d 480, 490 (Ind. 2012). Importantly, the <u>Hampton</u> Court explained that distinguishing between direct and circumstantial evidence is a difficult legal determination – one our trial courts, not our juries, should make. <u>Id.</u> Because the instruction given at Estes's trial required the jurors to determine that the evidence was circumstantial before requiring them to evaluate the evidence to exclude every reasonable theory of innocence, the instruction does not meet the <u>Hampton</u> requirements.[3]

Also, the State's reliance on another instruction given at Estes's trial is similarly misplaced. The State posits that the pattern instruction on the State's burden of proof can cure the instructional error here, arguing that the burden-of-proof instruction "said the same thing" as an instruction to attempt to fit the evidence to the presumption of innocence. Appellee's Brief at 9. However, our case law holds that an instruction on the State's burden of proof cannot save an inadequate presumption-of-innocence instruction. <u>See</u> <u>Vaughan v.</u>

---

[3] The Court held: "[W]hen the trial court determines that the defendant's conduct required for the commission of a charged offense, the actus reus, is established exclusively by circumstantial evidence, the jury should be instructed as follows: In determining whether the guilt of the accused is proven beyond a reasonable doubt, you should require that the proof be so conclusive and sure as to exclude every reasonable theory of innocence." <u>Hampton</u>, 961 N.E.2d at 491. In Estes's case, the evidence of the actus reus was established by direct evidence. Therefore, even if the jurors were capable of making this difficult legal distinction, the instruction would not have been appropriate based on the State's evidence.

14

State, 446 N.E.2d 1, 3 (Ind. Ct. App. 1983); see also Simmons, 179 Ind. App. at 344, 385 N.E.2d at 226. In Vaughan, we acknowledged that while presumption-of-innocence and burden-of-proof instructions are "logically similar," Indiana has "long required an instruction both on the presumption of innocence and the State's burden of proof." 446 N.E.2d at 3 (citing Simmons, 179 Ind. App. at 343, 385 N.E.2d at 225; Long v. State, 46 Ind. 582 (1874)). We held that giving both instructions:

> cautions the jury to put away from their minds all the suspicions that arise[] from the arrest, the indictment, and the arraignment and to reach their conclusions solely from the legal evidence adduced. Thus, Indiana has historically afforded the defendant more protection than is mandated by the Due Process Clause of the Fourteenth Amendment.

Id. (citations omitted).

Thus, similarly to our recent holding in Lee, we find that the instructions given by the trial court did not satisfy Robey. However, our analysis does not end there for, as noted above, the Lee court also observed that errors by the court regarding jury instructions are subject to harmless error analysis, specifically noting that "[e]rrors in the giving or refusing of instructions are harmless where a conviction is clearly sustained by the evidence and the jury could not properly have found otherwise." 964 N.E.2d at 862-863 (quoting Dill, 741 N.E.2d at 1233).

We first observe that in Lee, the defendant had been convicted of criminal confinement and intimidation stemming from an incident in which the victim met the defendant at a strip club, the victim called the defendant later that evening, and the victim agreed to enter the defendant's hotel room and drink alcohol. Id. at 860-861. On appeal, the defendant argued, and we agreed, that the court's error in not providing the instruction was

15

not harmless "because the evidence to support the convictions was equivocal and the jury struggled to reach a verdict" and that the victim's "testimony was inconsistent, contradictory and, to a large degree, improbable . . . ." Id. at 863.

Here, however, we find that the court's error was harmless because the evidence presented of Estes's guilt was overwhelming. As noted above, evidence was presented establishing that Estes was arrested with a package in his vehicle containing five pounds of marijuana. Estes asked Butters to accept the package, the transmitter showed that Estes immediately picked up the package after he arrived at Butters's residence, and he left the residence about a minute later with the package. Also, a postal clerk testified that Estes routinely sent similar-sized packages to California and used fake names when preparing the package labels, and one such label was recovered from Estes's vehicle. Also, a package sent by Estes to a "Michael Ericson" and containing the fake return addressee "J. Long" was intercepted and found to contain $9,910.00 in cash, the contact information from "Michael Ericson" was found in Estes's phone, and the State introduced postage records stating that in one month Estes had received three packages from California weighing between six and seven pounds, two of which had fictitious return addresses. Based upon the evidence presented at trial, we conclude that the jury could not have properly found that Estes was innocent of dealing in marijuana as a class D felony, and accordingly any error committed by the court in instructing the jury was harmless.

## III.

The final issue is whether Estes's sentence is inappropriate in light of the nature of the

offense and the character of the offender.[4] Ind. Appellate Rule 7(B) provides that we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, [we find] that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, the burden is on the defendant to persuade the appellate court that his or her sentence is inappropriate. Childress v. State, 848 N.E.2d 1073, 1080 (Ind. 2006).

Estes argues that "[t]he nature of the offense Estes was convicted of does not give rise to the imposition of the maximum sentence in this case." Appellant's Brief at 15. Estes argues that the court at sentencing "seems to have rested its imposition of the maximum sentence on Estes[']s character," noting in particular that he was on probation stemming from

---

[4] Estes also appears to argue that the court abused its discretion when it sentenced him by relying upon aggravating factors not supported by the record, and he specifically argues that the court relied upon aggravators not proven to a jury in violation of Blakely v. Washington, 542 U.S. 296, 124 S. Ct. 2531 (2004), reh'g denied, and that although "this Court is bound by the decision of our Supreme Court in Anglemyer[v. State, 868 N.E.2d 482 (Ind. 2007), clarified on reh'g, 875 N.E.2d 218 (Ind. 2007)], he respectfully disagrees and argues that the trial court erred in considering aggravating factors not proven to a jury." Id. at 16-17. Initially, we observe that "even if the trial court is found to have abused its discretion in the process it used to sentence the defendant, the error is harmless if the sentence imposed was not inappropriate." Mendoza v. State, 869 N.E.2d 546, 556 (Ind. Ct. App. 2007), trans. denied. Accordingly, we need not address this issue because we elect to exercise our option to review Estes's sentence under Ind. Appellate Rule 7(B). See Windhorst v. State, 868 N.E.2d 504, 507 (Ind. 2007) (holding that where the court on appeal finds that a trial court abused its discretion in sentencing the defendant, the court may either remand for resentencing or exercise the appellate court's authority to review the sentence under Ind. Appellate Rule 7(B)), reh'g denied.

However, we also note that the United States Supreme Court in Blakely held that the Sixth Amendment required a jury find beyond a reasonable doubt any fact used to aggravate a sentence beyond "the maximum [a judge] may impose *without* any additional findings." 542 U.S. at 303-304, 124 S. Ct. at 2537. The Indiana Supreme Court has noted that Blakely was applicable to Indiana's previous "presumptive" sentencing scheme and that in order to enhance a sentence under the presumptive scheme, "the sort of facts envisioned by Blakely as necessitating a jury finding must be found by a jury . . . ." Smylie v. State, 823 N.E.2d 679, 686 (Ind. 2005), cert. denied, 546 U.S. 976, 126 S. Ct. 545 (2005). However, Estes was sentenced according to Indiana's "advisory" scheme which supplanted the "presumptive" scheme on April 25, 2005. Edrington v. State, 909 N.E.2d 1093, 1096 n.2 (Ind. Ct. App. 2009), trans. denied. As observed by the Indiana Supreme Court, the "advisory" sentencing scheme does not run afoul of the holdings of Blakely and Smylie, and to the extent that Estes's argument depends on the contention that they do, we reject it. See Harris v. State, 897 N.E.2d 927, 928 (Ind. 2008).

17

a federal conviction, and he "request[s] this Court find the consideration of his Federal case to be an abuse of discretion" due to the fact that "it was clear [he] would have to face a potential violation of the same parole and had already been subjected to the Federal criminal penalties." Id. at 16.

Our review of the nature of the offense reveals that Estes was arrested with a box containing five pounds of "high grade" marijuana in his vehicle. Transcript at 29. At the time of arrest, his wallet and pants recovered from the vehicle's trunk contained cash in the amount of $1,681. A package sent by Estes to an address in California a day or two prior to the arrest was intercepted and found to contain almost $10,000 in cash. Also, evidence was presented at trial that Estes had been sending and receiving similar packages from California in the months leading up to the arrest.

Our review of the character of the offender reveals that Estes has a criminal history which includes offenses similar to the instant conviction. In 2002, Estes was ordered to pay a fine and court costs on a conviction for illegal possession of an alcoholic beverage. In April 2003, he was sentenced to sixty days suspended for failure to stop after an accident resulting in damage to a vehicle. In May 2003, he was ordered to pay a fine and court costs on a conviction for minor consuming alcohol. In December 2003, Estes was apparently ordered to pay a fine on a charge of possession of marijuana in Kentucky. In 2007, Estes was sentenced to four years in federal prison followed by four years of supervised probation for a conviction of conspiracy to possess with intent to distribute and to distribute 500 grams or more of cocaine. He was serving probation on the federal conviction when he was arrested on the instant charges. In addition, in November of 2011, after the arrest on the current charges but

18

prior to trial, Estes was arrested for disorderly conduct as a class B misdemeanor for an incident occurring in the jail in which Estes "joined in" with other inmates to batter one inmate who "may be mentally infirm." Appellant's Appendix at 255.

After due consideration, and especially in light of the fact that Estes was on probation stemming from a drug dealing conspiracy conviction at the time of commission of the instant offense, we cannot say that Estes's sentence of three years for dealing in marijuana and possession of marijuana is inappropriate.

## CONCLUSION

For the foregoing reasons, we affirm Estes's conviction and sentence for dealing in marijuana as a class D felony and reverse and remand with instructions that the court vacate Estes's conviction for possession of marijuana as a class D felony based upon double jeopardy principles.

Affirmed in part, reversed in part, and remanded.

VAIDIK, J., concurs.

BAILEY, J., dissents with separate opinion.

19

-

## IN THE
## COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAKE E. ESTES, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 39A01-1205-CR-214 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

**BAILEY, Judge, dissenting**

I believe that Estes has demonstrated reversible error in the refusal of his tendered jury instructions and therefore respectfully dissent from the majority's decision to affirm his conviction.

Article 1, § 13(a) of the Indiana Constitution guarantees an accused person the right to trial by an impartial jury. That right is essentially meaningless unless he is also entitled to have the jury properly instructed on how to perform its core function, that is, how to evaluate the evidence in reaching the ultimate determination of guilt or innocence. I believe that Estes

was denied due process when the trial court refused his instructions on the continuous presumption of innocence and reconciliation of conflicting evidence.

The presumption of innocence is a bedrock principle underlying criminal proceedings. Instruction as to the continuous presumption of innocence and the jury's duty to reconcile evidence in the defendant's favor if it can be does not merely address the State's burden of proof. It instructs the jury on how to evaluate the evidence from whatever source (whether from the State, the defendant, in direct form, or in circumstantial form).

Our case law – going back as far as our Supreme Court's decision in Farley v. State, 127 Ind. 419, 26 N.E.2d 898 (1891), to the more recent Robey v. State, 454 N.E.2d 1221, 1222 (Ind. 1983), and continuing to this Court's decisions in Simpson v. State, 915 N.E.2d 511, 519-20 (Ind. Ct. App. 2009), trans. denied, and Lee v. State, 964 N.E.2d 859, 865 (Ind. Ct. App. 2012), trans. denied – establishes the need to instruct jurors not only on the presumption of innocence, but also on the presumption's function:  in other words, jurors should be told how to reconcile the evidence before them in light of the presumption of innocence.  Indeed,

> An instruction of this character which advises the jury that the presumption of innocence prevails until the close of the trial, and that it is the duty of the jury to reconcile the evidence upon the theory of the defendant's innocence if they could do so, must be given if requested.

Robey, 454 N.E.2d at 1222 (citing Farley, 127 Ind. at 419, 26 N.E. at 899; Simmons v. State, 179 Ind. App. 342, 385 N.E.2d 225 (1979)).  In using the word "must," the Court employed a mandatory term.  I do not anticipate that there are circumstances in which an explicit request for such an instruction should be refused.  It was error for the trial court to refuse Estes's

request that the jury be instructed that the presumption of innocence prevails throughout trial and it is the jury's duty to reconcile evidence on the theory of innocence if the jury can do so.

Here, the jury was instructed if it (first) found a reasonable doubt, it could then give Estes the benefit of that doubt. The jury was also instructed that the evidence must exclude every reasonable theory of innocence <u>where proof of guilt is by circumstantial evidence only</u>. (App. 235.) (emphasis added.) As such, the jury was instructed that there is a predicate for favoring the defendant's evidence; this is clearly not equivalent to instructing the jury that it is their duty to reconcile the evidence on the theory of the defendant's innocence if it can do so. Nor was the jury expressly instructed that the presumption of innocence continues throughout the trial.

I agree with the majority that an appellant is not automatically entitled to reversal in the face of instructional error. Rather, we must disregard error which does not affect the appellant's substantial rights. Ind. Trial Rule 61. As such, it is necessary to look to the evidentiary record to determine whether the omission was harmless error in Estes's case.

The State's theory was that Estes took possession of the box with full knowledge of the nature of its contents. In furtherance of this theory, the State presented eyewitness testimony that Estes was seen carrying the box. The State also presented circumstantial evidence suggesting he had anticipated a marijuana delivery and attempted to pay for the product. Estes testified in his own defense, providing direct evidence that he had been in possession of the box while denying his knowledge of its contents.[5] He claimed to have

---

[5] There are indications that Estes may have been involved in an ongoing enterprise. However, while evidence of labels with fictitious addresses may have been relevant to Estes's knowledge of the contents of the box delivered to Butters, the jury was not – strictly speaking – charged with determining whether or not Estes

22

acted on behalf of Butters; she testified and denied any such arrangement. This is not a situation where the evidence – whether direct or circumstantial – points overwhelmingly toward a single scenario. The jury was asked to choose between competing scenarios. It is in these circumstances that an instruction regarding reconciliation of evidence in the defendant's favor is particularly appropriate. The omission of appropriate instructions is not harmless. As such, I would vote to reverse and remand for retrial.

had committed any other crime.